EDWARD SCANLON v. KANSAS CITY, Plaintiff in Error.—28 S. W. (2d) 84.

Court en Banc, May 15, 1930.

*John T. Barker, Wm. H. Allen* and *Marcy K. Brown, Jr.,* for plaintiff in error.

*Madden, Freeman & Madden* for defendant in error.

RAGLAND, J.—The following opinion was written by Commissioner LINDSAY, except the latter portion thereof dealing solely with the instruction designated in the record as No. 2 P. With this explanation, quotation marks will be omitted.

This suit was brought by Edward Scanlon against Kansas City for the recovery of damages for the loss of the services of his son Cornelius, and for expenses incurred in the nursing and medical attendance of the son, during his minority. It is alleged that the son, when an infant of the age of two years and five months, fell on a defective sidewalk in the city, and thereby suffered injury to his spine and spinal cord, from which paralysis resulted, rendering him forever afterward an incurable cripple. The injury is alleged to have occurred on August 8, 1900. In December, 1900, Edward Scanlon, on behalf of himself, filed suit for the damages herein in issue. At the same time, as curator of his son, he filed suit for damages on behalf of the son. The suit last mentioned was tried in 1902 and resulted in a verdict and judgment in favor of Kansas City, from which no appeal was taken. The effect of that judgment upon the right of Edward Scanlon to prosecute this action constitutes an important issue in this case, and the nature of the issues litigated in the son's suit will require attention later, on the question whether, and to what extent, if any, Edward Scanlon's instant action is barred by the judgment rendered in the action prosecuted by him as curator. The instant suit, first filed in 1900, was not tried until December, 1923, and out of that fact and the attendant circumstances shown in the record, arises the question whether this action was barred by limitation under the statute, a subject also to be considered later. In this case Edward Scanlon had a verdict of $30,000, which the trial court, by *remittitur*, reduced to $17,500, and judgment in that sum went against the city, and the city has brought the case to this court by writ of error.

The cause was heard and submitted here upon oral arguments and briefs filed by both parties. An opinion was adopted, calling for reversal of the judgment for errors of the trial court and a remanding of the cause. Defendant in error filed his motion for a rehearing, which was sustained. The cause was set down for rehearing. The city, in due time before the rehearing, filed its brief with assignments of errors, points and authorities and argument thereon. In response thereto defendant in error also filed a brief, accompanied by a motion asking that the brief of the city on rehearing, be stricken from the files, or, that in any event it be disregarded, to the extent, that it assigns errors upon grounds not assigned in the city's brief on the first hearing, or attempts to make points not included or pressed upon the first hearing. It is urged that the brief filed by the city upon rehearing was filed without leave obtained and ''purports to be an entirely new and independent brief in this cause.'' This asserted substitution or change of theory on the part of the city is directed wholly to the positions taken by the city upon the two questions above mentioned—whether the judgment in the son's case operates as a bar to recovery in whole or in part in this action, and whether this action is barred by limitation under the statute. In addition to the foregoing the city assigns errors in several respects, to be hereafter stated and considered.

Before proceeding to consider the assignments of error and the points in the brief of defendant in error upon rehearing, upon the contention that the verdict and judgment in the son's case bars and estops the father in the instant case, or the contention that the city is not to be allowed to go beyond the assignments and points made in its original brief upon that question, it is necessary to make statement of the pertinent facts, and the allegations of the pleadings in the two cases. In the petition filed by the father as curator in the case tried in 1902, the disabilities of the son resulting from his fall and injury, were set out with much detail. In addition to mental and physical pain, anguish and incapacity, it was set out in the petition in that suit that his (the son's) ''body is now completely paralyzed and void of sensation and incapable of action, *and will so remain during the rest of his life; and he will during the rest of his life be totally and wholly disabled from performing any work or labor;* and during the rest of his life will be obliged to be either carried, or wheeled around, and he has been and will remain permanently crippled and disabled in the lower half of his body, and his brain has become permanently diseased and impaired in the performance of its natural functions, and during the continuance of his life his brain will become more and more diseased and impaired, until the plaintiff will entirely lose the ability to voluntarily control the operation of his brain, *and after arriving at the age of majority will necessarily be compelled to expend large sums of money,* to-wit: the sum of $10,000 in nursing, care and attendance.'' (The Italics are ours).

Following that, the petition (in the son's case) alleged that "by reason of the matters and things aforesaid the plaintiff has been damaged in the sum of $35,000."

In the petition filed by the father in the instant case, it was alleged that Joseph Scanlon's body, including the organs therein, "became, is now, and has been completely paralyzed and void of sensation and incapable of action, control or use, and will so remain during the rest of his life, and he has been, and will, during the rest of his life continue to be totally and wholly disabled from performing any work or labor, and during all the years of his minority plaintiff has either had to carry or wheel him about, and nurse, care and provide for him as a helpless invalid, and he has been and will remain permanently crippled and disabled in the lower half of his body, and his brain became permanently diseased and impaired in the performance of its natural functions, and he has required guidance, attention and care because of his mental condition up to and beyond his majority."

Following that, it is alleged that by reason of said injury and consequent condition this plaintiff, the father, has been deprived of the services of his son during all the years of his minority, and had to care for, nurse and provide for him during said time, and during said time has expended for necessary medical and surgical treatment large sums of money. This allegation was followed by a statement of a large number of items of expense incurred for medical attendance.

The answer of the city to the petition in the instant case, set out at length the substance of the petition filed in the former action for the son's benefit, including the allegation in the son's petition that *"he (the son) would during the rest of his life be totally and wholly disabled from performing any work or labor,"* and including the allegations as to the permanently diseased condition of the son, and that he would become more and more diseased and would entirely lose the ability to voluntarily control the operation of his brain, *"and after arriving at the age of his majority he would necessarily be compelled to spend large sums of money, to-wit: the sum of $10,000 for nursing, care and attention."*

The answer then charged "that the injuries for which plaintiff (the father) as the curator of the estate (of the son) sought to recover judgment against Kansas City in said suit are the same injuries for which plaintiff seeks to recover judgment against the defendant (city) in this suit." It was next alleged that the son's suit was tried to a jury resulting in a verdict in favor of the city which "fully and finally determined that Kansas City's negligence did not cause the injuries alleged in said petition and alleged in the petition herein and that the city was not liable for the said injuries." It was next charged in the answer that the plaintiff's (father's) right to recover any damages in this suit is wholly dependent upon the fact, whether, the negligence of Kansas City caused or contributed, to the injuries of said Cornelius Joseph Scanlon as alleged in the petition filed by

the father as curator in the son's suit, and to the injuries to the son alleged in the amended petition in the father's suit. The answer next alleged "that by reason of the fact that said jury found that Kansas City's negligence did not cause nor contribute to, and that Kansas City was not liable for, the injury to said Cornelius Joseph Scanlon, alleged in the petition filed by plaintiff as the curator of the estate of said Cornelius Joseph Scanlon, and alleged in plaintiff's amended petition filed herein, plaintiff is estopped and fully and finally excluded and barred from the prosecution of this action."

The father, plaintiff in the instant action, filed a motion to strike out all that part of the city's answer referring to the adjudication in the suit of the son. The motion was called up just before the trial started, and the court announced that "for the time" the motion would be overruled. The trial began, and during its progress the father desired to offer in evidence a transcript of the testimony of some witnesses who had testified in the son's case upon the trial in 1902, and since deceased. To secure the introduction of this testimony, and to show that the basic issues of fact in the two cases were the same, the father himself introduced the petition in the former action. Later, after the plaintiff (defendant in error) had rested, and the city was making out its case, the city offered in evidence the verdict and judgment in the son's case, and upon objection, the court excluded the same. At the close of all the evidence, the motion to strike from the city's answer all reference to the adjudication in the son's case, was again called to the court's attention, and the motion was sustained, to which the city duly excepted. The grounds stated in the motion to strike out were general, and to the effect that the part of the answer attacked, was foreign to the issues in the case, incompetent, and constituted no defense. The record does not show the particular grounds on which the city contested the motion.

At the close of all the evidence the court gave Instruction No. 4-P for the plaintiff, telling the jury that the fact that a verdict and judgment were rendered in favor of the city in the son's case, did not constitute a bar to the father's cause of action, and must not be considered by them in reaching a verdict.

In the brief filed for the city upon the rehearing, the first assignment and point urged is that the court erred, in giving Instruction No. 4-P, and erred in sustaining the motion to strike out that part of the amended answer setting up the plea that plaintiff was "estopped and fully concluded and barred from the prosecution of this suit." Under this head, the claim in the city's brief on rehearing is that "the portion of the answer stricken out and the evidence which the jury was instructed to disregard, constituted a perfect and proper defense to those items of damage in the petition in this suit based upon the loss of the son's services during his minority," which, it is insisted, were also claimed by the father suing as curator in the son's suit.

In the original brief filed for the city upon the first hearing in this court, and upon the point that the judgment in the first suit was a bar to recovery in the instant case, it was insisted that error was committed by the court in refusing to sustain the city's demurrer, at the close of all the evidence, upon the ground, that the city's liability for any injury to the son had been previously adjudicated between the same parties, in favor of the city; and next, that the court committed error in giving Instruction No. 4-P and in sustaining plaintiff's motion to strike out part of the amended answer, for the reason, that the portion stricken out and not considered by the court constituted a "perfect and proper defense to the petition."

Counsel for the city in their brief upon the rehearing, and in respect to the judgment in the son's suit, take the position that the father in the suit prosecuted by him as curator, must be held to have claimed for the son damages for the son's incapacity to work during his minority, and said suit having been decided adversely to the plaintiff therein, the father cannot claim the same damages for himself in this suit, and therefore, the court committed reversible error in giving Instruction 4-P, and in striking out that part of the city's amended answer which set up the plea that plaintiff was estopped and fully concluded and barred from the prosecution of this suit. On the contrary, counsel for the father insist (1) that he did not as curator for his son, seek to recover for loss of earnings or services during the son's minority, and that such a contention or assumption is unsupported by the record; (2) that the answer filed by the city did not charge that the father had included damages for the loss of the services of his son in the son's case, and that no such theory having been incorporated in the answer nor advanced by the city on the trial, the city must be held on appeal to its theory in the trial court. It is next insisted that such theory was not incorporated in the assignments and points of the city upon the first hearing on appeal, and for that reason cannot be raised for the first time upon rehearing.

Counsel for the father have cited numerous cases under their contention that in the submission upon rehearing the city cannot for the first time make assignments or raise points not made by it upon the first hearing on appeal. Among these are decisions to the effect that in a reply brief or a brief merely supplemental in character, assignments or points cannot be raised which were not referred to in the original brief; and also, other decisions are cited to the effect that upon motion for rehearing an appellant cannot for the first time make assignments or raise points not made by him in the submission of the cause. Counsel have also cited certain decisions to the effect that when a rehearing has been granted, the party complaining cannot upon the submission on rehearing, make assignments or raise points not made upon the submission on the first hearing. Cases of

the class last mentioned cited, are Sharp v. Railway, 139 Mo. App. 525; Johnson v. Wabash Railway, 251 S. W. (Mo. App.) 719.

A good deal has been written on the subject, some of which is clear and some of which is not clear in its application to the immediate question. In 4 Corpus Juris, page 642, sec. 2530, it is said: "Where a rehearing is granted generally the cause is before the court for examination and decision as though it had never been considered and decided, and all points and questions that might have been presented on the original hearing may be presented on the rehearing, and an argument on the merits is then allowed; but if the application was based on particular errors in the original judgment, or if the court in granting the rehearing has limited it to a certain portion of the case, other points cannot be considered and should not be raised on the reargument."

In the following section (2531) it is said: "Questions which were not raised on the original hearing will not be considered on rehearing unless the question is jurisdictional." A multitude of authorities is cited from many jurisdictions, some of them ruling on the question upon a motion for rehearing, and others upon the rehearing itself.

In Standard Encyclopaedia of Procedure, Vol. 2, page 408, it is said: "If a rehearing is granted, no alleged errors excepting such as were raised on the original hearing will be considered."

In Union Pacific Railroad v. Colorado Postal T. C. Co., 30 Colo. l. c. 133, it was said: "A proposition not advanced at the original hearing of the cause will not be considered on rehearing. If now questions could be urged after decision rendered, there would be no end to a case brought here on appeal or error."

In Morris v. Light & Power Company, 302 Mo. 475, a case transferred from Division to Court en Banc, the court had the question of right of filing an abstract with reference to the setting of the case for hearing by Court en Banc, and wherein objection was made that the abstract could not be considered, although filed more than thirty days before the cause was set for hearing in Court en Banc. The court said, at page 481: "However, upon rehearing in a division, or after transfer to Court en Banc, a case stands just as if it had not been previously heard and submitted."

We do not refer to other authorities, or, beyond what we have already done, enter into a discussion of the alleged variances between the points made in the city's first brief and the points made upon rehearing. We pass that by as unnecessary, in view of the conclusion reached that as to the points urged by the city concerning the defense of estoppel or *res adjudicata* such points were not made in the trial court; and, that as to the city's position now upon the claim that the action is barred by limitation, the alleged new point is in part indicated in the original brief and discussion. As to the bar of estoppel or former adjudication it may be said that on the first hearing

upon appeal it was the city's claim that by the judgment in the son's case the father's cause of action was completely barred, and upon the submission on rehearing, the gist of the city's contention is that his cause of action is barred in part, by the judgment in the son's case, that is, as to the item of damages for the loss of services of his son during minority.

The present claim of the city upon this point embodies two contentions. The first one is, that in the son's suit, a recovery of damages was sought for the son's inability to labor and consequent loss of earnings during minority. This is the major premise of the city and essential to the validity of its claim. Counsel clearly recognize the rule that if an infant is wrongfully injured two distinct causes of action accrue—one in favor of the parent for the loss of services and expense incurred during the infant's minority, and another to the infant for the elements of damage from personal injury, including impaired earning capacity after reaching majority. They also proceed in recognition of the further rule that the parent is not bound by the judgment in the child's action merely because he acted as next friend, guardian *ad litem*, or guardian, except where he has permitted the child to recover or litigate the right to damages which would otherwise belong to the parent. The foregoing follows the text of Freeman on Judgments (5 Ed.), vol. 1, p. 1041, sec. 481. The other contention and minor premise of the city, is that since the father in this case, as curator, prosecuted the son's action seeking recovery for the item of lost earnings of the son during minority, the father is thereby barred and estopped from again litigating that question or recovering for himself that item of damages. Counsel for the city have cited a large number of decisions drawn from the courts of many states, in support of the contention that the parent under the circumstances claimed in this case, is estopped and barred of recovery of the item of damages under immediate consideration. Nearly all of these cases are collected and discussed in the lengthy annotation to be found in 37 A. L. R. beginning at page 11. The cases having to do with the question of estoppel of the parent, or bar of his right to collect for the loss of the son's services, are cited on page 64 of the note. We do not enter upon a discussion of the cases upon the point last mentioned, for the reason that we have reached the conclusion the issue of whether the father in the son's case sought to recover damages for the son for loss of earnings or inability to labor during minority, was not presented to the trial court for its ruling thereon. A careful consideration of that part of the answer of the city which was stricken out, and of the allegations of the petition in the son's case, and the reference thereto in the answer of the city in the light of the whole record, has forced the conclusion that the bar and estoppel now contended for by the city, was not made an issue upon the trial.

138

The answer of the city is not a sufficient plea of a bar or estoppel, of record or *in pais,* as to the item of damages we are considering—the father's loss of services of the son during minority. There are certain rules to be kept in mind. *"Res adjudicata* is an affirmative defense, and like all other defenses of that character must be pleaded, unless the petition upon its face shows that the cause of action sued on is in some way barred." [Kilpatrick v. Robert, 278 Mo. 1. c. 263.] "Where a former judgment is pleaded as a bar in a subsequent action, it is essential that it be alleged, not only that the issues were the same, but also that the cause of action and the subject-matter are the same, and that the proceedings in the former suit were taken for the same purpose." [34 C. J. 1061, sec. 1500.] "There is no disputing the rule, that such a plea *(res adjudicata)* should state the issues, so that the court may see whether or not the plea is available as a bar." [Pond v. Huling, 125 Mo. App. 480.] In considering the sufficiency of the plea stricken out, it is to be borne in mind that in cases of this character two causes of action arise. There is present the subject-matter of two suits. The element of injury to the infant, and the element of wrongfulness on the part of defendant causing the injury, are common to both causes of action,—parts of the subject-matter of both. The resultant distinct rights to recover damages are attributable to the relations respectively of parent and infant child. The city's answer wholly fails in specific averment or by fair intendment to plead that the right to recover for inability to earn wages or for loss of services of the son, during minority, was an issue in the son's case. The pleading in the answer of the allegation in the son's petition that he would "be wholly disabled during the rest of his life," is not sufficient, when the whole of the answer is considered, and the context of the son's petition is considered. The words as used in the son's petition were a part of the somewhat extensive allegation that the son's injuries were permanent. The answer did charge there was an allegation in the son's petition that he would be disabled during the rest of his life, and it is quite true that "the rest of his life" would include the remaining years of his minority; but, the city's answer does not apply the words quoted from the son's petition, as an element, in the asserted bar and estoppel. The purpose of the city to make such an application of those words is necessarily excluded by the enumeration of the specific grounds upon which the answer predicates the bar or estoppel attempted to be pleaded. The answer bases the asserted bar or estoppel specifically, upon two facts—first, that the *injuries* for which the plaintiff as curator sought recovery in the son's suit, *"are the same injuries* for which plaintiff seeks to recover judgment in this suit;" and second, the fact, conjoined with a pleaded conclusion, that the verdict and judgment in the son's case prosecuted by plaintiff as curator, *"fully and finally determined that the city's*

*negligence idid not cause the injury* alleged in the son's petition and also alleged in this plaintiff's petition.'' Having pleaded these two facts, the attorneys, who then represented the city, and drew the answer, next pleaded as a conclusion that the plaintiff's right to recover any *damages* in this suit, is wholly dependent upon the fact whether the *negligence* of Kansas City caused or contributed to the *injuries of the son* alleged in the petition filed by this plaintiff as curator, and to the *injuries* of the son alleged in the amended petition herein. The pleader for the city next stated its (the city's) conclusion from all the foregoing—its own construction of the purpose and effect of the allegations of fact as made in the answer. Transposing the language somewhat for better disclosure of its meaning, the city in such answer, and by way of summary, pleaded, that ''plaintiff is estopped and fully and finally concluded and barred from the prosecution of this action . . . by reason of the fact, that the said jury found that Kansas City's negligence did not cause nor contribute to, and that Kansas City was not liable for, the *injury* (to the son) alleged in the petition filed in that suit by the plaintiff as curator, and alleged by this plaintiff in the petition filed herein.'' Beyond cavil, counsel representing the city at the trial in 1923, did not anywhere in the answer use the word ''injuries,'' or ''injury,'' as synonymous with the word ''damages.'' It is nowhere alleged in the answer that the father sought recovery of damages, which, as curator, he had sought to recover in the suit for the son, but the answer excludes such a construction. Clearly, the city used the word ''injury'' or ''injuries,'' as referring to physical injuries, or conditions alleged to have been produced by the fall of the son. Those words were not used in an attempt to plead a bar to a part of plaintiff's cause of action, but in an attempt to plead a full and complete bar thereto; and, the bar so attempted, was explicitly founded upon the facts, first, that there was but one *injury* alleged to have been caused by one and the same act of negligence; and next, the fact that it had been adjudged in the son's suit that Kansas City's negligence did not cause the injury, identical, in each suit. We hold that the answer by no reasonable construction can be said to have presented to the trial court for decision, the issue that the father, asking damages in his own behalf for loss of services of his son during minority, had sought to recover that same item of damages for the son as curator in the son's suit.

Counsel for the city cite many cases recognizing the rule of estoppel of the parent from claiming for himself, damages which in the character of next friend or guardian, he had recovered or litigated for his infant child. This sort of estoppel proceeds upon the theory that the conduct of the parent in such cases was tantamount to emancipation of the child, in respect to the loss of earnings sued for, and as a waiver by the parent of his own right to recover the same. The

conclusion we have heretofore stated makes it unnecessary to notice the class of cases just mentioned, because an essential element considered in those cases is not put in issue by the answer. The decisions therein proceed upon the promise that the parent as guardian *had sought* to recover for a child damages which, of natural right, were recoverable by the parent for his own benefit, and that having done so, he was estopped by his own acts and conduct amounting to a surrender of his right to his child. The answer herein stated no basis for an estoppel by conduct, and if it is to be considered as an attempt to set up a bar of an estoppel *in pais* it is insufficient on that theory. The rule as to pleading an estoppel is stated in Grafeman Dairy Co. v. Northwestern Bank, 315 Mo. 859. ''Estoppel is an affirmative defense and must be pleaded. . . . Estoppel must be pleaded with particularity and certainty. [Bigelow on Estoppel (6 Ed.) page 764.] Every essential fact must be set forth, for nothing can be supplied by inference or intendment, and where there is ground for inference or intendment, it will be against and not in favor of the estoppel. [21 C. J. 1247.]'' The answer does not expressly plead a waiver or that the father had emancipated his son; and, in failing to allege that as curator he had sought to recover for the son an item of damages now sought to be recovered for himself, it fails by intendment to charge that by the prosecution of the other suit, he emancipated his son, or waived his own right to recover that item of damages. For that reason the trial court did not err in sustaining the motion to strike.

In Singer v. Railroad, 119 Mo. App. 112, it was held that the emancipation of a minor child is never presumed, but to make it an issue it must be pleaded, and if relied upon must be proved.

Next, and somewhat related to the foregoing, is the claim of error in the giving of plaintiff's Instruction 4-P. As to this point the city is in no better position than in respect to the assignment based upon the striking out of the part of the answer. The petition in the son's case was in evidence, and the judgment in that case was offered, but not admitted. It was offered very near the end of the trial. The plea of *res adjudicata* and estoppel in the answer of the city set forth the allegations of the son's petition as showing the issues tendered by that petition—their scope and effect, and thereon and upon the specific grounds the city asserted a complete bar. As we have seen, the answer neither directly nor by fair intendment, pleaded that in the son's case and under all the allegations in his petition, recovery was sought for loss of earnings during his minority, or, that there was a waiver by the father, curator, of his right to recover that item of damages. The city's answer did not set forth or construe the son's petition as presenting for adjudication in that suit the right of the son

to recover that item of damages and there is nothing in the record to show that at any point in the trial the city contended that the petition in the son's suit, was evidence that the item of damages now sought to be recovered by the father in his own right, was in the son's suit sought to be recovered for the son by his curator, and that an estoppel was predicated thereon as to the father. It is not enough that in the son's suit, this plaintiff, in the dual capacity of parent and curator, might or could have litigated or recovered for the son the item of damages under consideration. But, in this case it was necessary for the city to establish the fact that the issue of recovery of this item of damages for the benefit of the son, was actually and necessarily litigated and determined in that suit. For an illuminating statement of the governing rules we refer to the opinion of Judge Sanborne in Pierce v. Bank, 268 Fed. 487, quoted with approval in Bank of Commerce v. Maryland Casualty Co.; 307 Mo. l. c. 435. On appeal and upon rehearing, definitely for the first time, the city contends that the son's petition, considered as evidence, is evidence that the item of damages under consideration as a part of the father's cause of action in this suit, was actually adjudicated in the son's suit. In other words, the city upon this hearing, on appeal, asks that there be given to the son's petition as a piece of evidence, a meaning and effect entirely different from that given it either as pleading or as evidence, by those representing the city upon the trial. No such theory as is now advanced was in any way presented to the trial court for ruling thereon. The instructions upon which the son's case was submitted were not offered in evidence. No instruction withdrawing this item of damages was asked. The trial court had before it evidence of the fact that by the suit of this plaintiff, the father, filed on the same day as the son's suit, he sought recovery of the item of damages now under consideration. In Slaughter v. Nashville C. & St. L. Ry., 28 Ky. L. R. 665, the court had under consideration a like question. In that case the court considered the language of the petition in the son's case and the language of the petition in the father's case, and held it could not be said with any show of reason that the father intended to forego or waive in favor of his son his right to recover, when he instituted his own action asserting his own right (in that case, prior to the action then in court by the son). The court further said that the question was one of intent; that it took into consideration the fact that in such cases there were two distinct causes of action arising from the minor's injury. The court said: "We are not disposed to destroy that of the father upon a mere technical construction of the language used in the son's petition." In this case under what appears in the record there was no pleading of intent, or submissible evidence of manifestation of an intent, on the part of the father to surrender to his

son the father's right in respect to the item of damages under consideration. Counsel for the city cite State ex rel. Gott v. Fidelity & Deposit Co., 298 S. W. 83, 1. c. 88, to support their contention that the petition, verdict and judgment are sufficient to show the scope of the former adjudication in the absence of anything further; but, we hold that the petition, verdict and judgment in the former case, without more, pleaded or shown, under the circumstances of this record are not sufficient to show the bar and estoppel now contended for. In considering this point it is to be borne in mind that the item of damages claimed and here under consideration was not an element necessary to an adjudication of the cause of action belonging to the son, but merely a claim which could have submitted in that case only by the consent of the father, and it was incumbent upon the city to show such consent. In any event, the trial court should not be convicted of error upon a theory and in respect to a matter, not presented to it, and radically different from the theory upon which this phase of the case was tried. The court did not err in giving instruction 4-P for plaintiff.

The next contention is that the court erred in overruling the city's demurrer offered at the close of all the evidence, for the reason that, on the face of the record, the plaintiff's cause of action was barred by the five-year Statute of Limitations. The first petition was filed December 8, 1900, and was voluntarily dismissed in January, 1904.

Counsel for the city make no controversy as to that. The amended petition on which the case was tried was filed on February 27, 1923, and in that petition the plaintiff alleged that on the 4th day of February, 1904, he brought his action against the city alleging therein the same facts in substantially the same language as in his amended petition; that said action remained pending in the court until the 3rd day of December, 1915, on which day he suffered a nonsuit, and a judgment of dismissal was entered by the court; that his original petition herein was filed on December 2, 1916. The foregoing facts were pleaded by the plaintiff in avoidance of the Statute of Limitations. The city pleaded the statute as a defense. The case is one to which the five-year Statute of Limitations (Sec. 1317, R. S. 1919) applies; and, under the provisions of Section 1329, Revised Statutes 1919, if a party suffer a nonsuit he has the period of one year thereafter in which to commence his action anew. Under this assignment, the city's present contention is two-fold. The first is, that the record shows the involuntary nonsuit suffered by the plaintiff on December 3, 1915, and does not disclose when any pleadings were filed subsequent thereto, until the filing of the amended petition in 1923; that neither the original petition (of Dec. 2, 1916), to which, the amended petition was filed, nor the record showing the filing of such petition on December 2, 1916, was introduced in evidence; but, that such pe-

tition was abandoned by the amendment of February 27, 1923, was not made a part of the bill of exceptions, and cannot now be considered. The other claim is, that the record, otherwise, fails to show continuity of action to permit the application of Section 1329, and counsel for the plaintiff insist this was not made on the original hearing. Under this branch of the city's claim it is insisted, there is no showing that plaintiff filed a suit on February 4, 1904, and within the five-year period after the occurrence of the injuries; and that after the date of the dismissal entry made by the court, December 3, 1915, there is no showing of the filing of plaintiff's suit within one year after December, 1915. Thus subdivided, and elaborately discussed, the city's claim as a whole, is a claim that the plaintiff's evidence fails to show that he brought his action within five years after the alleged injuries; and, that even if he did so, he did not thence keep it alive until the filing of his amended petition.

We have carefully considerd the evidence, the entries on the appearance docket, the court record and the oral testimony under the claim of the city upon the rehearing that the evidence does not show the filing of suit by plaintiff on February 4, 1904, or show that the cause of action then set up is the cause of action presented by the amended petition, or show that the suit was dismissed by the court on December 3, 1915, for want of prosecution. We are now dealing with that period in the history ending with the dismissal on December 3, 1915. We will not lengthen this opinion by stating the details of the evidence upon the facts just indicated, but hold there is substantial evidence in the record of those facts. The original files of the suit filed in 1904 had been lost, but the entries on the docket and the oral testimony tended to show the proceedings, and the identity of the cause. Persuasive of the correctness of the conclusion just stated, is the fact that upon the first hearing upon appeal the city did not make the contention now made as to want of evidence, to establish the facts as to the period mentioned. In the statement of facts in the city's original brief, in the course of, and preliminary to the argument upon the bar of the Statute of Limitations, it was treated as being true that there was evidence to show the fact that plaintiff instituted suit in February, 1904, and that such suit remained on the docket until in December, 1915. In the course of their argument on the question of the bar of the statute, counsel expressly said that plaintiff introduced evidence tending to show the original suit filed by him "in this case, was filed on the 20th day of December, 1900;" that "some time in 1904 he dismissed that suit, and shortly thereafter in February, 1904, instituted another suit." The statement in the brief immediately continues: "This suit filed in 1904 remained on the dockets until December 3, 1915, at which time, it was dismissed by the court of its own motion for failure to prosecute." The argument of counsel for the city on the first hearing was that plaintiff failed

to show by any proper evidence that after the dismissal in December, 1915, he filed another suit within one year, as required by Section 1329, and it was not urged there was failure of evidence to show the filing in February, 1904, or the dismissal in December, 1915. In addition to the statements of counsel in their brief on the first hearing on appeal, it is shown by the record that counsel who tried the case for the city made an opening statement to the jury, the report of which was introduced and read in evidence, and therein counsel for the city treated it as a fact that plaintiff in February, 1904, did institute a suit similar to the one he had first instituted, and similar to his present suit, "claiming the same cause of injury, claiming the same injuries, claiming the same loss of services and for doctors' bills, nursing and so forth." In that opening statement the petitions were described as being, "if not identical, almost so," and as being so "in substance." Upon this question of bar of the statute in the respect under immediate discussion, the present position of the city is not that of mere advancement of a new theory as to the law, but it is basing that theory upon an asserted insufficiency of evidence which in the first hearing it conceded was sufficient, and we hold to be sufficient.

We next consider the claim that there is no evidence to show the refiling of the suit on December 2, 1916, or within one year after the nonsuit. The abstract of the record proper does not show the filing of this original petition, nor is the petition set forth in the bill of exceptions. The case was tried on the amended petition filed in February, 1923. It is insisted on behalf of the city that the filing of the amended petition was an abandonment of the original petition which was then no longer a part of the record proper, and not being incorporated in the bill of exceptions, it is not before us. Such has been the ruling in Wood v. Wells, 270 S. W. 332, citing on the same point Mo. Pac. Ry. v. Continental Bank, 212 Mo. 1. c. 517; Ingwerson v. Railroad, 205 Mo. 1. c. 335, and other cases. The record shows that immediately after the introduction and reading to the jury of the opening statement of counsel for the city, the following occurred:

"Mr. Madden: I now offer in evidence the filing of the present suit, No. 106284, in the Circuit Court of Jackson County, Missouri, at Kansas City, Edward Scanlon against Kansas City, petition of plaintiff filed December 2nd, 1916, by James B. Shoemaker, Clerk, by D. M. McClanahan, Deputy Clerk. Frank M. Brumback, Attorney at Law, Rialto Building, Kansas City, Missouri."

It may be noted now that Mr. Madden had succeeded Mr. Brumback as the plaintiff's attorney. The record does not show any statement made by the court following Mr. Madden's offer, and the attorney for the city made no objection or comment of any kind, but proceeded to take up other matters—by recalling a witness for re-cross-examination. The question goes to the sufficiency as well as the

form of the proof made to show the filing of the present suit on December 2, 1916. There is a good deal of discussion in the briefs of counsel as to where the burden of proof lies. It seems clear that without the pleading of the facts set up in avoidance of the statute, the plaintiff's petition would have been demurrable. [Henoch v. Chaney, 61 Mo. 129; Garth v. Motter, 248 Mo. 477.] In 37 Corpus Juris, page 1244, sec. 770, it is said: "The party who relies on facts in avoidance of the statute has the burden of proving such facts. This is true where he alleges facts to avoid the running of the statute, and those facts are denied by the pleadings of the adverse party." See also St. Joseph v. Wyatt, 274 Mo. 566, 574-5. Reference to this question is made because of its extensive discussion in the briefs, but the real question here goes to the form and sufficiency of the showing made.

Counsel for the city argue that the statement of the plaintiff's counsel was a merely gratuitous and self-serving statement, and that there is nothing to show the petition or any record was physically produced.

The opposing counsel were in the immediate presence of the court. The paper referred to was one of the files of the court. Under the circumstances, and in view of the language of plaintiff's counsel, and in the absence of any objection by counsel for the city, it may be assumed that the offer was an exhibition of the original petition in the suit on trial, and of the file mark thereon, accompanied by the statement or reading by plaintiff's counsel therefrom as of fact, of the number and style of the case and the date of its filing, and, that this was so accepted by the court, and by opposing counsel. It is again observed that this proceeding followed immediately after the reading in evidence of the opening statement of counsel for the city, wherein reference was made to these filings, and to the identity of the cause of action in such suits. It might well be assumed that counsel for the city saw no reason for encumbering the record with a copy of the original petition and of the filing marks thereon. The objection urged comes too late, and is overruled.

The dismissal of December 3, 1915, was a dismissal for failure to prosecute the suit. It was held in Meddis v. Wilson, 175 Mo. 126, that a dismissal of a case for want of prosecution was a nonsuit within the meaning of Section 1329, which section tolls the Statute of Limitations and permits another action to be brought for the same purpose within one year after the nonsuit. See also Wetmore v. Crouch, 188 Mo. 1. c. 656; Mason v. Railroad, 226 Mo. 212, 223. The case is presented upon the theory on both sides that if there was a dismissal for want of prosecution it was a nonsuit. There was and is in the case no point as to a refiling, by permission of the court at the same term, of a suit dismissed by the court at that term and wherein the court may exercise his discretion in permitting the reinstatement of the case; but, the question

here is one of a right by force of the statute to bring another suit within the time prescribed, after the nonsuit.

It is next insisted that the evidence conclusively shows the plain- tiff was guilty of such negligence contributing to his son's injury, that as a matter of law he cannot recover for his own benefit. The place of the occurrence of the alleged injury was a board walk on the west side of Belleview Avenue, be- tween 25th and 26th Streets in Kansas City, and about one block and a half distant from the home of the plaintiff. At the time of the occurrence of the injury the child was with his father and mother and they were walking south on the board walk, return- ing from a visit to a doctor's office, which was six or seven blocks distant from their home. They went to the doctor's office between seven and seven-thirty in the evening, and were returning at the time of the injury about a half hour later, and it was still light. They had gone to the doctor's office on account of some injury which had been sustained by plaintiff's wife to her arm about one week before. The child walked with them all the way to the doctor's office and walked on the way back to the place where he fell. At the time, Belle- view Avenue was a street comparatively unimproved and there was not a great deal of travel upon it. The father and mother were the only persons present, or who saw the child fall. At the time he fell the parents were walking side by side. The child sometimes walked with them holding his father's hand, sometimes was a little behind them, and sometimes walked or ran a little ahead of them. At the time he fell he was eight feet or more ahead of them. His mother testified that just before he fell he "kind of gave a run you know, and as he did he just struck his foot in a hole . . . fell with a twist, . . . fell right on the walk in a twist; fell in the direc- tion he was going; fell kind of side ways toward the right." The plaintiff himself testified the child ran ahead just as they were ap- proaching the hole where he fell. The testimony for the plaintiff was, that at the place where the child fell there was an opening ex- tending across the sidewalk—"a kind of wedge-shaped opening in the boards, two or three inches in width at the east side of the walk; that the board there was rotted more at its west end and the stringer underneath it broken down—kind o' torn out like." The father and mother said they did not see the hole before the child fell. The father testified there was a depression in the location where this hole was, and there were higher boards in north of it, "and that in approaching the place he did not see it until he was three or four feet from it." Three photographs of the sidewalk were introduced in evidence, and some of the witnesses, the plaintiff among them, were examined somewhat with reference to what these photographs showed. However, the photographs were lost, and are not in the record. The references to the photographs in cross-examination of the plaintiff by counsel for the city indicate that they showed a number of holes

in the sidewalk. Plaintiff's answer appears tacitly to admit that fact; but, on his redirect examination he testified he could only remember two holes, the one where the boy fell, and another. The father and mother both testified that before the child fell they did not observe the hole where he fell on either the trip to or the return from the doctor's office, before the time when the boy fell. The reasons given by the father why he did not see the hole in the walk where the boy fell, sooner than he did, were, that the depression at that place hid it from his view until within three or four feet of it, and also that at the time he was walking beside his wife, and they were in conversation about what the doctor had said. The testimony of the father, as well as the mother, was to the effect that their ordinary engagements and movements did not require them to go over this walk.

Counsel for the city on this hearing call particular attention to the testimony, on cross-examination, of plaintiff's witness W. J. Schillo, as showing that the plaintiff was in the habit of passing over that walk on the way to his work. His testimony on that point is not very direct. This witness lived at 2608 Belleview Avenue, and the plaintiff lived at 2700 on Belleview Avenue. Their respective places of employment were northwestward. The testimony of Schillo in respect to whether the plaintiff went north upon Belleview Avenue in going to his work is rather vague. Schillo said there were several holes and that between 25th Street and 26th Street this sidewalk on Belleview Avenue was bad.

The plaintiff, testifying after Schillo, and on cross-examination, said that in going to his work he "generally went west on 27th Street to the Terrace" and thence by a route which he described, and which he said was two or three blocks nearer than by going the route which Schillo referred to. Michael McKeever, another witness for plaintiff to whose testimony on cross-examination counsel call attention, said that between 25th and 26th Streets there were three or four holes in the sidewalk, additional to the one where the boy fell.

In ruling on the demurrer we are obliged to consider the evidence in the light most favorable to the plaintiff and allow all reasonable inference therefrom in his favor. The answer charged contributory negligence, in that the father permitted the child to walk along the sidewalk unattended; that he failed to discover any holes or defects in the walk, and did not prevent the child from stepping into a hole. The contention presented here is that the plaintiff's evidence showed contributory negligence on his part as a matter of law. In Chawkley v. Wabash Railway, 317 Mo. l. c. 805, the rule is stated as follows:

"The general rule is that when a parent brings an action in his own name for the death of an infant child, he must be denied recovery if his own negligence contributed to the accident which resulted in the child's death, provided the defendant was negligent

only, and did not wantonly inflict the fatal injury. [23 A. L. R. 670 et seq.]''

In 29 Cyc. 1643, it is said:

''The parent is required to exercise reasonable care in regard to the safety of the child, and contributory negligence on the part of the parent will preclude a recovery by him for an injury to or the death of the child. Whether or not the parent has been guilty of such contributory negligence as will defeat a recovery in a particular case depends upon the facts, and not only the age but also the intelligence and physical ability of the child are to be considered.''

In Howard v. Scarritt Estate Co., 267 Mo. l. c. 402, it is said:

''The rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct, producing and efficient cause of the casualty, and absent which the casualty would not have happened.''

In this case the plaintiff was in the company of the child, and the question is whether the evidence is such that as a matter of law it must be said he was guilty of contributory negligence through failure to exercise ordinary care to observe and to avoid danger to the child. In Howard v. Scarritt Estate Company, supra, the parents, with their child four years old, were in an elevator, which, in its customary mode of use and the use of other like elevators in starting, reached a height of six or eight feet above the starting place before the door was fully closed. If either of the parents had retained a hold upon the child, he doubtless would not have fallen through the door. It was ruled that the question of the negligence of the parents was one for the jury. In the instant case we cannot say as a matter of law, the facts in evidence show contributory negligence.

Plaintiff in error assigns as error the giving at the instance of plaintiff of the instruction designated in the record as No. 2-P. The instruction follows:

''The court instructs the jury that you are the exclusive judges of the weight of the evidence and the credibility of the witnesses and of the ultimate fact as to what caused the paralysis (if any) of plaintiff's son. If you find that he was paralyzed in the lower part of his body and the lower limbs then in determining what caused said condition you should take into consideration all the facts and circumstances which you find to be shown by the evidence including the testimony of the experts. It is your duty to weigh and consider such expert testimony, but the court instructs you that the testimony of all the experts on both sides of the case, as to the cause of said condition, is merely advisory in character and not binding on the jury. In passing upon the weight and credibility of such testimony you may do so in the light of such knowledge and experience as you possess in common with men in general and also in the light of all the facts and circumstances which

you find to be shown by the evidence and accept such testimony as appears reasonable and convincing to the minds of the jurors, or to reject such testimony, as does not so appear.'' The principal objection leveled against the instruction is that it singles out and comments upon the opinion testimony of the expert witnesses.

It was broadly intimated in Spencer v. Railroad Company, 317 Mo. 492, 503, that the giving of instructions of this character was inconsistent with the principles of law governing the trial of issues of fact to a jury. The question should be definitely disposed of.

An opinion, when not a mere guess or conjecture but an inference drawn by one of requisite experiential capacity from adequate data, *is evidence*. Notwithstanding, an opinion is not admissible in evidence if in the given case the inference can as well be drawn by the jury as the witness.

''The essence of the principle thus suggested is that the witness's inference is superfluous and unnecessary, and should therefore not be brought into the case. Such is the motion which underlies the so-called opinion rule. The witness's opinion is excluded, not because inferences as such are objectionable—for a witness's knowledge and all knowledge is made up of inferences—but because the inference under the circumstances is superfluous, and because if one person could be summoned and inquired of in this way, then the opinion of a score could equally be asked, all of them superfluous and calculated to encumber the trial, without adding anything to the essential data already before the jury. The opinion of a so-called expert and the opinion of a layman may upon this principle be equally superfluous and inadmissible, while, conversely, the opinion of a layman as well as that of an expert may be helpful and necessary. . . .

''There is, therefore, no rule admitting opinions or inferences when made by one class of persons—experts—and excluding them when made by another class—laymen; but there is a rule excluding them whenever they are superfluous and admitting them whenever they are not. . . . Thus, in practice, opinions are receivable, first, from persons having special skill (whether the data in question have been personally observed by them or are stated to them) whenever that special skill enables them, better than the jury, to draw inferences on the subject; secondly, from persons who have no special skill but have personally observed the matter in issue, and cannot adequately state or recite the data so fully and accurately as to put the jury completely in the witness's place and enable them equally well to draw the inference.'' [1 Greenleaf on Evidence (16 Ed.) pp. 549-550.]

When a lay witness gives an opinion and it is received on the ground that the nature of the subject-matter is such that it cannot be reproduced or detailed to the jury precisely as it appeared to the witness at the time, his testimony is said to be a shorthand rendering

of the fact: an inference drawn from given data by a person who is peculiarly qualified to do so by reason of his experience or special skill or learning is no less a fact. There is therefore no logical distinction between opinion testimony in the sense here used and so-called fact testimony. [4 Wigmore on Evidence (2 Ed.) pp. 100-125, inclusive.] The values of both are measured by precisely the same standards. And hence the corollary: The testimony of experts is to be considered like any other testimony, is to be tried by the same tests, and receive just so much weight and credit as the jury may deem it entitled to when viewed in connection with all the circumstances. [Lawson on Expert and Opinion Evidence (2 Ed.) p. 282; Morrow v. Service Company, 286 S. W. 106, 116; State v. Crane, 202 Mo. 54, 84, 100 S. W. 422.] And the further corollary: An instruction of the court which disparages or singles out for comment the opinion testimony of expert witnesses is a plain usurpation of the functions of the jury: the jury are the sole and exclusive judges of the credit and weight to be given such testimony. [State v. Hundley, 46 Mo. 414, 421; Thompson v. Ish, 99 Mo. 160, 12 S. W. 510; Duvall v. Kenton, 127 Ind. 178; Louisville, New Orleans & Texas Railway Company v. Whitehead, 71 Miss. 451; Estate of Blake, 136 Cal. 306; Nelson v. McLellan, 31 Wash. 208; Ryder v. State, 100 Ga. 528.]

The decisions of this court in conflict with the views above expressed should be no longer followed.

For the reasons just indicated the giving of the instruction in question was plainly error. Did the error materially affect the merits of the action? That is the question of practical importance on this phase of the case and the one to be now considered.

One of the sharply contested issues before the jury was whether the paralysis from which plaintiff's son had suffered since the fall on the sidewalk was caused by the fall or had resulted from disease. On this issue plaintiff's evidence, aside from his opinion testimony, tended to show the facts assumed in the following hypothetical question which he propounded to his expert witnesses:

"Q. Now, Doctor, assuming that this child on August 8th, 1900, when he was two years and five months old, and he had had good health up to that time—a bright active child, running about; never had any ailment of any kind excepting a spell of whooping cough about a year before; and that on this occasion he walked with his parents some five or six blocks down to Dr. Leonard's office, and back to a point about a block to the Scanlon home at Twenty-seven and Belleview; and at that point, now, he ran ahead of his parents on the sidewalk and stepped or fell into a hole in the sidewalk and fell forward with a twist of his back, upon the sidewalk. That from that time the child never walked. He got some slight bruises to the leg in front of and below the knee and in the instep—some bruises of a minor character—but he refused to stand when the

father attempted to have him stand after he took him out of the hole, and the father carried him home. And from then on—that was Wednesday night—he refused to stand upon his limbs and apparently did not use his limbs, but lay flat in bed on his back. He was restless during the intervening nights, but on Saturday night he developed a fever and the following day lost the control of the bowels and kidneys and suffered contraction of the muscles and seemed to suffer a great deal of pain. His temperature showed on that day to be somewhere in the neighborhood of 104 degrees. He was unconscious at times. The test on either Sunday or on the Tuesday following revealed a lack of sensation in his lower limbs, the child refusing to respond to the prick of a pin as it went up the leg until it reached a point at the hips. That the child had fever from then on for ten days or two weeks and he had trouble in controlling the bowels and kidneys. There were contractions of the legs after a period of three months and an operation was necessary in the year 1902 to straighten out the legs. Then another operation was performed in 1910. Now, assuming those facts, Doctor, I will ask you to state whether or not, in your opinion as a physician, that condition of that child could have resulted from that fall on the sidewalk as I have described.''

In answer to such question plaintiff's expert witnesses said that in their opinion the fall on the walk could have caused the paralysis.

Defendant was not in a position to offer, or at least did not offer, countervailing proof as to the facts assumed in plaintiff's hypothetical question. However, it had plaintiff's son examined by a physician just before the trial and the latter testified as to the conditions he then found. The facts so testified to, in addition to those assumed in plaintiff's hypothetical question, were embodied in a hypothetical question which defendant propounded to its expert witnesses. The question so propounded, after reciting the facts assumed in plaintiff's question, proceeded as follows:

''Now, in addition to that the boy—that was in 1900—August, 1900; and in addition to that, in December, 1923, upon examination it was shown that the boy, now twenty-five years old, is walking with crutches and the aid of braces extending from the foot to the thigh; and on examination it was found that the patient had a flaccid paralysis of many—not all—of the muscles of the lower limbs —and that this paralysis was irregularly distributed, the right leg being more extensively paralyzed than the left, there being power to flex or bend the toes and abduct the foot on the left side, but no such power on the right side, and that the inner ham-strings were paralyzed on the one side and the outer ham-strings paralyzed on the other side. That the abductor muscles of the thigh were much weaker on the left than on the right side. And furthermore there was no disturbance of sensation or touch or pain in the limbs in this examination in December; and that the patellar reflexes were

absent on both sides, and furthermore that the patient stated at the time the examination was made, that there was no paralysis or inability to control the bladder or the bowels. What would you say, Doctor, in your opinion, as to whether or not the stepping into the hole in the sidewalk—the hole which I have described, and the fall in the manner I have described—could produce the condition which I have described?''

In answer to such question defendant's expert witnesses said that the boy's paralysis in their opinion could not have been caused by his fall on the sidewalk. They further stated that the facts hypothesized showed a typical case of infantile paralysis.

Thus, the experts on one side drew from the hypothesized facts the inference that the boy's paralysis was caused by trauma—the fall; those on the other side drew the inference that the paralysis resulted solely from the germ disease known as infantile paralysis; both on cross-examination gave at length the reasons that led them to draw their respective inferences.

Now the instruction gave the jury plainly to understand that the opinion testimony was not evidence in the same sense that the other testimony was: that it was mere advice which they were at liberty to disregard. And if they did disregard it, as is probable, the defendant was in effect left without any proof on this issue. After excluding the opinion testimony there would remain the facts: that an apparently active, healthy child fell upon a sidewalk; that immediately following the fall he did not stand and did not thereafter use his legs; and that within about three days after the fall paralysis of the lower part of the body set up and became permanent. From these facts alone a jury would be inclined to infer that the fall caused the paralysis—although they would not have the requisite experiential capacity to draw such an inference, the fall of a small child on a sidewalk in the circumstances indicated with resulting paralysis not being within the common experience. That the instruction was prejudicial to defendant and for that reason necessitates a reversal of the judgment is manifest.

Other alleged errors are complained of but as they are of such a character that they will not necessarily arise upon another trial of the cause, they will not be considered.

For the error in giving Instruction No. 2-P the judgment is reversed and the cause remanded. All concur.

PER CURIAM:—The opinion of RAGLAND, J., in Division, is hereby adopted as the opinion of the Court en Banc. All concur, except White, J., who dissents.