EDWARD SCANLON v. KANSAS CITY, Appellant.—81 S. W. (2d) 939.

Court en Banc, April 25, 1935.

*George Kingsley, James R. Sullivan* and *Arthur R. Wolfe* for appellant.

*Madden, Freeman & Madden* for respondent.

FRANK, C. J.—This case was reassigned to the writer on April 17, 1935. It is an action by Edward Scanlon against Kansas City to recover damages for the loss of services of his infant son, Cornelius Scanlon, and for care, nursing and medical and surgical treatment occasioned by an injury caused by a fall on a defective sidewalk on August 8, 1900, when the son was two years and five months old. The history of the litigation following the son's injury is stated in respondent's brief substantially as follows:

"On December 20, 1900, two suits were filed, one on behalf of the boy for his injuries by respondent as his guardian and curator, and one on behalf of respondent for loss of services, nursing, care and medical and surgical attention. The boy's case was tried in November, 1902, and a verdict was returned in favor of the defendant upon which judgment was rendered. The suit which the father brought on December 20, 1900, was dismissed January 25, 1904, and refiled on February 4, 1904. That suit remained pending until December 3, 1915, when it was dismissed; on December 2, 1916, it was refiled, within the year provided by the statute, and summons was issued and served on the defendant on that day. That is the present suit.

"The cause was first tried in February, 1923, and a verdict was returned in favor of respondent in that trial for $30,000. Appellant took an appeal, dismissed it and subsequently sued out a writ of error. In prosecuting that writ of error appellant took the position that the present action was res adjudicata on account of the result in the son's case which respondent had prosecuted as guardian and

curator. The judgment was reversed and the cause remanded because of the instruction on the value of expert testimony. [Scanlon v. Kansas City, 325 Mo. 125, 28 S. W. (2d) 84.] All other assignments of error were disallowed.

"The cause, remanded in accordance with the opinion, was retried in conformity therewith. Appellant again pleaded *res adjudicata* within the limits permitted by the opinion. A trial was had which resulted in a verdict and judgment in favor of respondent for $20,000, from which defendant appealed."

Respondent offered substantial evidence to the effect that prior to the son's injury on August 8, 1900, he was in perfect health, never had any sickness of any kind except a light case of whooping cough from which he fully recovered, and had no impediment or disabilities in body or limb. The evidence further shows that at the time in question respondent, his wife and son, were walking along and over the board sidewalk in question, when the son, running a short distance ahead of his parents, stepped into a hole in the sidewalk and was thrown forward with a twisting of his body, to the surface of the sidewalk. Respondent ran to the relief of his son, lifted him from the hole and attempted to stand him on the sidewalk, but he could not stand. From the time of the son's fall to the present time his limbs have been paralyzed. Evidence tending to show that the son was a robust, rugged and healthy child prior to his fall on the sidewalk, and that since that time his limbs have been paralyzed is not disputed, therefore, no useful purpose would be served in stating in detail or discussing the evidence tending to show such facts. The sole contention made by appellant as to the sufficiency of the evidence is that there was no substantial evidence tending to show that the paralysis was caused by the fall on the sidewalk, but that it was a disease known as infantile paralysis.

We do not so construe the evidence. Plaintiff proved by a number of doctors that the boy's condition could have been caused by the fall on the sidewalk. While such medical evidence, standing alone, does not show, prima facie, that the boy's condition was caused by the fall, yet such evidence was admissible though alone it did not make a prima facie case. [Wack v. Schoenberg Mfg. Co., 331 Mo. 197, 53 S. W. (2d) 28, 31.] However, plaintiff's case does not rest alone on this testimony. The expert witnesses offered by plaintiff, some of them testifying from hypothetical questions propounded to them, others from knowledge acquired from personal examination and treatment of the boy, all testified, in substance, that in their opinion the boy's condition was caused by the fall upon the sidewalk. As corroborative of the opinion of the medical witnesses as to the cause of the paralysis, they testified to the diagnostic symptoms which followed the boy's fall on the sidewalk, explaining that such symptoms clearly indicated that the boy's trouble was traumatic myelitis

or injury to the spinal cord, and negatived the idea that it was the result of a disease known as infantile paralysis.

The evidence presents a picture of an active, healthy child, with no symptoms of disease or impairments of any kind, running on and along the sidewalk in advance of his parents. He steps into a hole in the sidewalk and is thrown in a twisting fall. His father immediately picks him up and attempts to induce him to stand, but the child's limbs are limp and lifeless and he is unable to stand. He was never thereafter able to use his lower limbs. They are permanently paralyzed. Respondent contends that this sequence of events, without the aid of medical testimony, amounts to substantial evidence that the boy's condition was caused by the fall and would authorize a jury to so find. Regardless of our views of this contention we need not determine it, because in addition to the sequence of events, we have the positive, substantial evidence of medical witnesses that, in their judgment, the paralysis was caused by the fall and was not induced by disease known as infantile paralysis. The evidence, taken as a whole, made a case for the jury and warranted a finding that the boy's condition was caused by the fall.

It is contended that the court erred in the admission of evidence in the following particulars:

I. In permitting the plaintiff to read to the jury the testimony of medical and lay witnesses on behalf of the plaintiff at the trial of the son's case in 1902.

II. In permitting the plaintiff to offer in evidence and read to the jury from the shorthand reporter's transcript of the testimony at the trial of the son's case in 1902, the hypothetical questions submitted to medical witnesses and their answers based thereon.

III. In admitting in evidence the medical opinion of Dr. Reigel given at the trial of the son's case in 1902.

IV. In admitting certain parts of the testimony of Dr. Ludwick from the former trial in 1923.

■ The record shows that in the trial of the instant case the plaintiff offered and introduced in evidence, without objection, a complete transcript of all the evidence that was admitted in the trial of the son's case in 1902, which contained all the evidence to which appellant is now objecting except that of Dr. Ludwick. On this showing, the evidence admitted in the trial of the son's case in 1902, is in this case without objection. Subsequent to the introduction of the transcript of the evidence in the son's case, and after the introduction of other evidence, the plaintiff in this case offered to introduce and read from the transcript the evidence of various witnesses, to which the defendant objected. After having permitted the transcript containing this evidence to be introduced without

objection, and without moving to strike such evidence, an objection made for the first time when the plaintiff offered to read such evidence to the jury from the transcript, was too late.

■ The evidence of Dr. Ludwick to which appellant objects is contained in the following questions and answers:

"State what could have been the effect in the spinal ·cord? Answer: It could have caused a hemorrhage." "Question: What kind of a hemorrhage, and how could that hemorrhage have been caused, in your opinion? Answer: Well, the twist—the jar itself might have bursted a little blood vessel either inside the meninges, or within the meninges—the covering of the cord—and it might have produced a clot which, making a pressure on the cord, would have interfered with its functions, and within a few days—as you know, nerve tissue is very sensitive, and in a very few days—say two or three days—it might start up a softening, which is a disintegration or decay."

Appellant's objection to this evidence is that it is purely speculative and·is the basis for an inference upon an inference. This evidence, standing alone, would not· show, prima facie, that the boy's fall on the sidewalk caused the paralysis, but that fact does not determine its admissibility. The question is whether or not the evidence is admissible for any purpose. We have held time and again that it is not error to permit an expert witness to testify that a given cause might, could or would produce a certain result. In the recent case of Kimmie v. Railroad, 334 Mo. 596, 605, 66 S. W. (2d) 561, 564-5, we said:

"We do not hold, however, as defendant contends, that it is improper to ask an expert witness if something might, could or would produce a certain result. An expert's view of possibility or probability is often helpful and proper. [22 C. J. 623, secs. 713, 714; 11 R. C. L. 582, sec. 12, ·p. 633, sec. 52; 4 Wigmore on Evidence, 198, sec. 1976.] Where there are other facts which tend to show an accident caused a certain condition, the assurance of an expert that it is scientifically possibly is of some aid to the jury in determining what are reasonable inferences to be drawn from such facts. So, also, where impossibility of a claimed result is relied upon as a defense, expert testimony to that effect is evidence for a defendant upon that issue. [Scanlon v. Kansas City, 325 Mo. 125, 28 S. W. (2d) 84.] Contrary evidence for the plaintiff, in such a case, of possibility would be proper because that matter would be a jury issue."

If an expert witness is entitled to give his opinion that a given cause might, could or would produce a certain result, it must follow that he is entitled to give the reasons why he entertains such an opinion. The evidence of Dr. Ludwick to which objection is made is nothing more than his reason for thinking that the boy's fall on the sidewalk might, could or would produce the condition he was in

after the fall. It would be of some assistance to a jury of laymen to know that the boy's condition might or could have been produced by the fall.

It is next contended that the father is not entitled to recover for the time and labor expended in nursing and caring for his son.

Appellant's theory is that the father would be entitled to recover for any money actually paid out or expense incurred for care and nursing, but is not entitled to recover for the services which he himself rendered in that regard. In support of this contention, appellant invokes the rule that service rendered by one member of a family to another, in the absence of a contract for compensation, is presumed to be gratuitous. This rule is settled law, but it has no application to the facts of this case. If this were a suit by the father against the son to recover the value of the father's services in caring for and nursing the son, the rule invoked by appellant would apply and serve to defeat the father's claim. This is a suit by the father, not against the son, but against a wrongdoer to recover damages which he has suffered because of the negligence of the wrongdoer. It is settled law that a negligent defendant is liable for all damages caused by such negligence. In the instant case, the negligence of the defendant necessarily caused plaintiff to expend time and labor in caring for and nursing his son, and for that reason, the defendant is liable to plaintiff therefor. Our courts have recognized the right of a parent to recover for services such as the plaintiff rendered to his son in this case. [Smith v. St. Joseph, 55 Mo. 456, 459; Frick v. Railway, 75 Mo. 542; Schmitz v. Railway, 46 Mo. App. 380, 391; Pennington v. Kansas City Railways, 213 S. W. 137; Baxter v. Transit Co., 103 Mo. App. 597, 78 S. W. 70; Blackwell v. Hill, 76 Mo. App. 46; 4 Sutherland on Damages (4 Ed.), sec. 1252, p. 4767; 1 Joyce on Damages, sec. 305, p. 365; 46 C. J. 1313.]

Appellant cites in support of above contention Gibney v. St. Louis Transit Company, 204 Mo. 704, 722, 103 S. W. 43; Morris v. Grand Avenue Railway, 144 Mo. 500; Ephland v. Railroad, 57 Mo. App. 147; Baldwin v. Kansas City Railways Co., 218 S. W. 955; Woeckner v. Erie Electric Motor Co., 182 Pa. St. 182, 37 Atl. 936.

The cited cases are not in point. They neither discuss nor decide whether a negligent defendant is liable to a parent for the care and nursing of his child made necessary by the negligence of such defendant. The Gibney case holds that services rendered to a plaintiff by members of his family are not elements of damage in an action for personal injuries in the absence of a contract that such services were to be paid for. The theory of that holding is that the injured plaintiff should not recover from the transit company for services for which she herself was not liable. The Morris case merely holds

that the plaintiff could not recover from the railroad for medical services in the absence of any evidence that he had paid for such service or incurred liability therefor. The Baldwin case holds that the plaintiff could not recover from the railway for nursing services gratuitously rendered to him by members of his family. The Ephland case simply holds that the plaintiff in that case could not recover for loss of time in face of his own evidence which showed that during the period of his suffering from injury he was paid his regular monthly wages. The Woeckner case holds that a father cannot recover for care and nursing of his child by other members of the family. That question is not in the instant case. Here the trial court excluded services rendered the injured son by other members of the family and permitted the father to recover for only such service as he himself rendered.

Further contention is made that the father is not entitled to recover for services rendered his infant son, unless on account of such service the father lost wages from his regular employment. Defendant requested instructions submitting that theory to the jury which the court refused. There is no merit in this contention. The father being entitled to recover for the care and nursing of his son, the measure of his recovery is the reasonable value of the services rendered as care and nursing, regardless of the time and wages he may have lost by reason of enforced absence from his regular employment in order to look after and care for his son. [Freeman v. Railway, 95 Mo. App. 94, 68 S. W. 1058; Thompson v. Railway, 203 Mo. App. 356, 360, 218 S. W. 343.] Plaintiff's right to recover is not determined by the fact that he may or may not have lost time from his regular employment. Neither is the amount of his recovery measured by the value of time lost from his regular employment. He is entitled to recover the reasonable value of the services rendered. Defendant's requested instructions on this issue were properly refused.

Contention is made that plaintiff's given Instruction No. 1 is erroneous in that it does not limit the amount of plaintiff's recovery for medical expense and other special damages to an amount within both the pleadings and the evidence.

The total of the items of special damages as pleaded in the petition is $5050. The proof as to such items is $3225. "Where the amount of special damages proven does not exceed the amount specified in the petition, it is not reversible error for the court to fail to limit in its instruction the amount of such special damages, for the reason that the jury will be presumed to follow the instructions of the court and allow such amount of damages only as is shown by the evidence. [Shutz v. Wells, 264 S. W. 479, 485; Leighton v. Davis, 260 S. W. 986, 989; Laycock v. United Railways, 290 Mo. 344, 356, 235 S. W. 91.]

■ The final contention is that the verdict of $20,000 is excessive.

The evidence shows that the lower part of the boy's body and his lower limbs were paralyzed from the date of his fall. He lost control of his bowels and urine. He needed constant care and attention for a period of fifteen years. The evidence as to the amount of money expended by the father for medical and surgical treatment, and the reasonable value of the services of the father in caring for and nursing the son exceeded $20,000. We need not discuss the evidence touching these questions because defendant does not claim that the verdict is excessive if the father is entitled to recover for the services he rendered to his son. Our holding that he is entitled to recover for such services answers the contention made on this issue.

The judgment should be affirmed. It is so ordered. All concur.