CARLISLE S. GRISHAM AND W. D. BELL, CO-PARTNERS, COMPOSING THE FIRM OF SOONER DISTRIBUTING COMPANY, APPELLANTS, v. V. W. FREEWALD, RESPONDENT.—95 S. W. (2d) 349.

Springfield Court of Appeals. May 20, 1936.

Rehearing denied June 27, 1936.

1204

*Robert C. Fields* and *Mann, Mann & Miller* for appellants.

*Ruark & Ruark* and *W. I. Mayfield* for respondent.

SMITH, J.—This is a suit brought by plaintiffs to recover damages in the alleged amount of $400 for damage to plaintiff's truck caused by the defendant negligently colliding with said truck with a Ford motor car driven by the defendant.

The plaintiffs have given a reasonably fair statement of the case, and which statement with slight 'alterations we adopt.

This cause was brought by plaintiffs in the Circuit Court of Laclede County, to the May Term, 1934, of that court, to recover damages to

a truck owned by them, growing out of an accident occurring on May 6, 1934, on Highway 66, some seven or eight miles west of Lebanon, Missouri, wherein plaintiffs' truck was run into and damaged by a Ford coupe automobile owned and driven by defendant. Plaintiffs in their petition alleged that defendant was negligent in driving his automobile at high speed; in driving his automobile to the left of the center of the road; in driving his automobile without keeping a proper lookout ahead and that the defendant negligently violated the so-called last chance or humanitarian rule.

Defendant filed an answer consisting, first, of a general denial and second, of a counterclaim seeking damages on account of the damage done to defendant's automobile, on account of injuries to himself and on account of loss of services, society and companionship of his wife, and for medical expense incurred in connection with his own and his wife's injuries. In this counterclaim defendant alleged that plaintiffs were negligent in that they failed to keep a vigilant watch and lookout ahead; that they failed to keep the truck and trailer under control; that the truck and trailer was operated at a high rate of speed, and that such truck was driven upon the left hand side of the highway, and further alleged the violation of the humanitarian or last chance doctrine on the part of plaintiffs' driver.

Plaintiffs sought to recover the sum of four hundred ($400) dollars by their petition and defendant's counterclaim is for five thousand ($5,000) dollars.

Plaintiffs filed an answer to the counterclaim wherein they alleged that defendant was guilty of negligence which caused or directly contributed to cause and bring about such, if any, injury or damage which he suffered and in which practically the same acts were alleged as contributory negligence on the part of defendant as were alleged by plaintiffs as constituting their cause of action and right to recover against respondent.

The case was tried at the February Term, 1935, of the Laclede County Circuit Court. Plaintiffs' evidence was to the effect that they owned the Ford truck and semi-trailer involved in the accident, which was then driven by one Howard Holly; that his accident occurred at a place some seven or eight miles west of Lebanon, Missouri, on Highway 66, and that the highway is paved to standard width of approximately twenty feet, with concrete, with dirt shoulders on either side; that the accident happened on a short level space at the top of a hill, that is, that there was a level space on the top of this hill, and that in either direction at the ends of this level space the highway slanted down so that both the truck and automobile drove uphill approaching the place of accident until they reached the level space estimated at about 300 to 400 feet in length. The evidence further

shows that there was a slight curve in the highway toward the west end of this level space.

Plaintiff's evidence then further tended to show that the truck was running east and defendant's car (which we will call the Ford) was going west. There were no actual eye witnesses to the wreck, except the truck driver, Howard Holly, and defendant, Mr. Freewald, and his wife, Mrs. Freewald. Witness Holly testified that as he came over the top of the rise from the west he was running about thirty miles an hour and saw the Ford car coming at a high rate of speed, that he judged to be about fifty miles an hour; that the Ford was just then coming over the crest of the rise from the other direction and was driving about a foot to the left of the center of the highway. He stated he then pulled as close to the right hand side of the pavement as he could, but that the Ford turned back and got over on its right side of the highway and then again swerved to the left when the truck and Ford were only about thirty feet apart, and ran into the left side of the truck and trailer. This witness testified that as the Ford made the last swerve toward the left he pulled his truck clear off of the pavement and had his right wheels off on the shoulder at the time of impact, and that the left front end of the Ford first hit that part of the truck known as the tractor, or truck proper, about at the back end of the cab and then sideswiped clear on back along the side of the trailer, struck the left rear trailer wheels and then swerved around and came to rest back on the north side of the highway, facing back in a southeasterly direction. The truck, in turn, went clear on over with its right wheels in the ditch to the south of the south shoulder of the highway; the two vehicles coming to rest about eighty or ninety feet apart.

Several witnesses produced by plaintiffs testified to finding tracks at the scene of the accident immediately following the wreck indicating that the wreck occurred on appellant's right and respondent's left hand side of the road and as testified to by the witness, Howard Holly.

Plaintiff's witnesses, Albert Mager and Rowlena Mager, testified that defendant's car was running at a very high rate of speed as it passed them at the bottom of the hill just before the accident occurred and as it went on up over the crest of the rise and out of their sight. These witnesses were those persons who arrived first at the scene of the accident and immediately following the wreck.

Plaintiff then offered evidence by the witness, Harry Hooker, as to the damage to their truck.

Defendant was the first witness for himself. His testimony was to the effect that he was on a trip home to Neosho from Chicago and that he left Lebanon, Missouri, the morning of the accident about six o'clock. He described the place of accident in about the same manner

as it had been described in plaintiffs' evidence, except that he contended the curve at the top of the hill was a sharper curve than plaintiffs' evidence showed it to be and contended that the grade down from the place of accident leading west was not so steep an incline as plaintiffs' evidence had showed it to be; that is, that the truck, in approaching the place of accident, had not pulled so sharp a grade as plaintiffs contended. He testified that as he drove west that morning he was running about forty-five miles an hour but slowed down going up the grade approaching the place of accident, so that as he came in sight of plaintiffs' truck he was running about forty, forty-one or forty-two miles an hour. He stated he could not, and he did not give any estimate as to the speed the truck was running, would not say that it was running as fast or faster than he was.

He testified that the accident occurred about 200 feet west of the crest of the rise that he drove over, that is, said "I had this accident a couple of hundred feet after I went over the crest of this rise." And further stated "Before I got clear to the crest I could see on on over the top and see the top of this truck coming."

He then testified that when he first saw this truck it had already gotten over the center line, that is, to the north of the center line and stated "When I first got up to where I could see the whole truck I then saw it was over on my side of the road." He testified that the truck was something over 200 feet from him when he saw that it was clear over on his side of the road, and that it was still coming more on his side, cutting across the curve, and that it then ran straight down the road entirely on his side of the road. He testified that then, while they were 200 feet or more apart, he "commenced to get off on the shoulder." He testified that the truck driver did attempt to turn the truck back to its side of the road, but that the truck and trailer were so long that in angling back across the road it blocked the entire width of the pavement and he continued on and ran into the left rear side of the trailer, hitting it just at the left rear wheels. He testified that his brakes were in "first class shape;" in such shape that they ought to slide all four wheels, and further testified that, running at the speed he was going, he could have stopped in 100 feet.

There are other parts of the evidence which we shall notice under the consideration of different points in the case.

The case was tried to a jury and resulted in a verdict against the plaintiffs on their claim for damages, and a verdict for defendant for $1500 on his counterclaim.

Motion for new trial was overruled, and plaintiffs appealed to this court.

The first complaint is that the trial court erred in refusing the plaintiffs' requested peremptory instruction to the effect that the defendant was not entitled to recover upon his counterclaim.

There is competent evidence in the case that the plaintiffs' driver was driving this truck and trailer on his left hand side of the road, the side to which the defendant was entitled. This was sworn to by the defendant and his wife. Also there was evidence showing that the double tracks of the trailer were seen on the driver's left hand side of the highway. This evidence was given to show negligence on the part of the truck driver. It was denied by him, but it was sufficient to make it a question for the jury as to whether he was negligent in driving the truck on the wrong side of the highway, and as to whether that negligence caused the injury to defendant. There was evidence sufficient to go to the jury as to defendant's personal injuries; as to the injuries to his wife; the damages to his Ford coupe and as to the expenses in connection therewith.

The plaintiffs cite us several cases to sustain their contentions. Among these cases are De Lorme v. St. L. Pub. Service Co., 61 S. W. (2d) 247; Madden v. Red Line Service, Inc., 76 S. W. (2d) 435; and State ex rel. v. Trimble et al., 52 S. W. (2d) 864.

We find no complaint with the holdings in those cases. It is sufficient to say that under the facts in this case, we think the above cases are not authority for holding here that the defendant did not make a case for the jury on his counterclaim. We rule this point against the plaintiffs.

The second point is that there was error in the admission of improper evidence on the part of defendant. Some of the questions and answers complained of and objected to at the time are these:

"Q. Well, did you have time to get your car stopped after you saw him angling across the road? A. No, I didn't have time to stop the car.

"Q. Well, did he drive his car straight ahead, or did he turn to the right or to the left? A. He pulled out to the right as far as he had time to.

"Q. Was there room between the rear of this truck and the edge of the road for you to pass? A. No, there wasn't any room there."

These questions were asked in connection with many others, which we do not set out here, about which there is no complaint. The testimony of the defendant was that the driver of plaintiffs' truck was approaching him, and that the truck was completely over on the wrong side of the road, and that the truck and trailer were about thirty-five feet long, and that as they approached each other the truck was going approximately thirty miles an hour, and the Ford going forty or forty-five miles per hour. The defendant said, and also his wife, that the truck began to turn to its right and angled across the highway, with the front part of the truck turning until it reached its right hand side of the highway, but with the rear of the trailer still on the left hand side of the highway. It was in connection with

this situation that the above questions were asked and the answers given. If those were all the questions asked in connection with the instance, there might be something to the contention. But other questions were asked about the same matter that in no way could be subjected to this objection. We do not want in any way to be classed as abandoning the general rule that a witness must testify to facts and leave it to the jury to draw its conclusions from those facts, but under circumstances such as shown here, we do not believe this case should be reversed because of the questions and answers in this case. We think we are sustained in this conclusion by the holdings of our Supreme Court in the following cases: Sullivan v. Union Electric L. & P. Co., 56 S. W. (2d) 97, 104; Heinbach v. Heinbach, 202 S. W. 1123; Scanlon v. Kansas City, 28 S. W. (2d) 84, 95.

The plaintiffs also contend that error was committed by improper questions and answers being admitted by the court in the examination of one Dr. Hamilton. We quote just what the record shows pertaining to this point. After the witness had been asked the qualifying questions as to his graduation as a physician, his license to practice in this State, and his experience in practicing since 1906, the record shows as follows:

"I examined Mrs. Freewald yesterday. I examined her with respect to the injuries she had sustained, and she had fibrous tumor on the right hip. I should judge it was about the size of the palm of my hand, right around here. It would compare with the size of a small orange, only it was not nearly so thick. It stands out about an inch, inch and a half, possibly. I was not able to tell how deeply that tumor goes inwardly. It is underneath the skin within the musular tissue. These conditions are caused by direct violence. They frequently are painful, and could be on account of pressure. I would think that it would be painful on account of the—It is a foreign body and any foreign body inside, especially when you lie over there or disturb that—lie on that side. It might cause considerable pain in getting about.

"Q. (interrupting) Now, those fibrous tumors of the character you found there, what is the usual and natural result of them—where do they go to from there where you find it?

"MR. MILLER: We object to that as calling for a conclusion of the witness.

"THE COURT: I think he can give an opinion. Objection overruled.

"To which ruling of the court the plaintiffs, and each, of them, by their counsel, then and there duly excepted and at the time saved their exceptions.

"A. Let me see. Will you state the question again?

"MR. RUARK:

"Q. What is the likely result, Doctor, the natural result in your

opinion likely to follow or happen in this condition as you find it at the present time? A. The condition as it is now is apt to be permanent; I don't think it will ever go away.

"Q. It is permanent? A. Yes.

"Q. Now, state whether or not in your opinion those conditions like this and similar to this, are or not likely to become malignant and cancerous.

"MR. MILLER: Now, we object to that as certainly going within the realm of speculation and conjecture.

"(Question read by the reporter, as follows:) 'Q. Now, state whether or not in your opinion those conditions, like this and similar to this, are or are not likely to become malignant and cancerous?'

"THE COURT: Objection overruled.

"To which ruling of this court the plaintiffs, and each of them, by their counsel, then and there duly excepted and at the time saved their exceptions.

"MR. MILLER: We object to it for the further reason that it is without the pleadings.

"THE COURT: Objection overruled.

"To which ruling of the court the plaintiffs, and each of them, by their counsel, then and there duly excepted and at the time saved their exceptions.

"A. They could become cancerous; a very favorite site for a cancer, a fibrous mass acts as a foreign body.

"MR. RUARK:

"Q. It is a fibrous mass now? A. Yes.

"Q. By cancerous you mean a cancer development? A. Yes, cancer development. I don't know that it will but it could.

"MR. MILLER: Now, we object to the doctor's answer and move it be stricken out for the reason that he says he doesn't know whether it will or not, and for that reason it is purely speculative, not a definite statement of fact.

"THE COURT: Objection overruled.

"To which ruling of the court the plaintiffs, and each of them, by their counsel, then and there duly excepted and at the time saved their exceptions.

"MR. RUARK: Q. Of course all you are stating is just your opinion, isn't it, Doctor? A. Yes, that is my opinion about it."

Since the plaintiffs contend the above examination is beyond the pleadings, we set out the paragraph in defendant's answer and counterclaim that has reference to the wife's injury, as follows:

"That the wife of the defendant was violently thrown, cut, bruised, shocked, wounded, contused, strained and otherwise injured in such collision. That because such injuries defendant has been required since such date to secure medical attendance for her and treatment

in the hospital, and that hereafter for a long time to come he will be required to expend large sums for her and on her account for medical and hospital attention. That because of such injuries the services, society and companionship of the wife of the defendant have been lost to him, and will be so lost to him for a long time to come.''

We think the foregoing part of defendant's answer and counterclaim with reference to his wife's condition shows clearly that the examination was not beyond the pleadings. The witness was a qualified physician, and as such could give opinion evidence. A reading of his answers does not show that he said she had cancer, or that her injuries were malignant. We think under the circumstances and the pleadings here that there is no reversible error here. We think we are sustained in this conclusion by the following case: Granberg v. King Candy Co., 81 S. W. (2d) 981, and cases cited.

The third assignment is stated as follows:

''The court erred in permitting counsel for respondent to argue matters outside and not within the scope of the evidence and outside and not within the scope of the pleadings.''

Under this point we quote from the record just what was said in the argument with the objections thereto, as follows:

''No, his (referring to Mr. Freewald) natural instinct was to get away from that object moving towards him; that was the natural instinct, wasn't it, of the truck driver? Doesn't the testimony bear out here that it was the natural instinct of the truck driver? And when this Ford car was approaching him, what did he do? He turned from the north side of that highway on which he was traveling to get over onto the south side and get over onto the side where the law required him to be and where he ought to have been if he had been complying with the law. He done that, sat here and testified to you men that he done that to preserve himself, and then the next breath would have you believe—

''Mr. Miller: Just a minute; just a minute. He stated there that the truck driver sat there and testified that he turned from the north side of the road—

''Mr. Mayfield: Yes, he did, he testified—

''Mr. Miller: Let me make my objection, please, Mr. Mayfield.

''Mr. Mayfield: All right, you are misconstruing my argument.

''Mr. Miller: We object to that as being outside of the record, that the truck driver did not testify that he turned from the north side of the road.

''The Court: Well, I don't remember whether he said that or not.

''Mr. Mayfield: He testified—

''Mr. Miller: Well, I want a ruling.

''The Court: Well, that's all right, I'll rule on it.

1212

"MR. MAYFIELD: I was arguing the proposition of self-preservation, that is what I was arguing.

"THE COURT: Wait just a minute.

"MR. MAYFIELD: Beg your pardon.

"Argument read by the reporter.

"THE COURT: I don't think there is any testimony to that effect, I don't remember that the truck driver said that, and if you want to withdraw that, all right, and if you don't want to withdraw it I will let it go ahead and then we will take it up on motion for new trial.

"MR. MAYFIELD: I don't want to argue anything, Judge, that is not bourne out by the testimony, and if the court says that my argument was not, I will withdraw the argument.

"THE COURT: Well, I don't know whether it was or not, but my judgment is there was not any evidence on the part of the truck driver that he said he went from the north side of the road to the south.

"MR. MAYFIELD: Well, I will withdraw that statement, then, and, gentlemen, don't consider that in making up your verdict. I might have gotten a little far there in stating that he testified he went from the north side. The thing that I wanted to impress upon you was that, wherever he was on that highway according to his own testimony, or wherever he was on that highway as you gentlemen say from this testimony he was, he turned away from that approaching vehicle of Mr. Freewald, that was the natural instinct for him to do, but he is trying to have you believe that Mr. Freewald wouldn't follow his natural instinct to get away from an accident or a collision there but would deliberately run into that moving vehicle coming toward him. That was the point I wanted to make.'"

We think in view of the court's statement and the withdrawal on the part of the attorney making the argument that this was not reversible error.

The fourth and fifth assignments complain of error in giving defendant's instructions number 7 and 8. These instructions are as follows:

"D. G. 7: The jury are instructed that if they find and believe from the evidence that the defendant and defendant's wife were injured by reason of his automobile coming into collision with a truck, then being run and operated by the servant and employee of the plaintiff, and that at such time the defendant was driving his automobile upon or to the right of the center of the highway upon which he was traveling, if shown, and that the plaintiffs' truck was then being negligently driven upon the left hand side of the center of the highway, considering the direction it was traveling, if shown; and that as a direct result of plaintiffs' truck being so driven, if shown, the defendant's car and the plaintiffs' truck came into collision, and that the

defendant was at the time in the exercise of the highest degree of care upon his part, then the jury will find the issues for the defendant.''

''D. G. 8:

''If the jury find the issues for the defendant on his counterclaim, they will allow him such damages as will afford him fair and just compensation for:

''First: His loss of time, if any, due to the injuries, if any, received by him in the collision, the pain and suffering, if any, endured by him as a result of such injuries, if any. And the jury may also take into consideration the nature and character of his injuries, whether they are temporary or permanent, and the amounts expended, if any, for necessary medical treatment.

''Second: The difference, if any, between the reasonable market value of the defendant's automobile just before and just after the collision.

''Third: Damages, if any, which have resulted and which will be reasonably certain to result to the defendant in the future from the impairment, if any, of his wife's ability to perform domestic services for the family.

''Fourth: Damages, if any, resulting to defendant from the loss of his wife's society and companionship in the past and such loss, if any, as they may believe to be reasonably certain he will suffer in the future.

''Fifth: The reasonable amount they may believe defendant has paid for services of physician, nurses and medicine to treat the injuries, if any, of himself or wife received in or directly due to the collision in question.''

The plaintiffs contend that instruction No. 7 is erroneous in that it completely ignores the last chance or humanitarian doctrine, an issue made by the pleadings. The plaintiffs insist that in this case the omission of the defense of the humanitarian doctrine is fatal to this instruction, and they cite us many cases which they contend are in point. We have carefully examined those authorities, and think they do not sustain plaintiffs' contention in a case like this. There would have been some merit to this point, if the plaintiffs had not requested and the court had not given an instruction covering the defense as applicable to the plaintiffs under the humanitarian rule. The record in this case shows that originally the plaintiffs sued the defendant for $400 for damages to plaintiffs' truck. The defendant filed an answer and counterclaim, claiming damages for his wrecked car and damages for personal injuries to himself and for money paid out for medical treatment for himself and for his wife. The plaintiffs filed an answer to defendant's counterclaim in which the plaintiffs alleged defenses thereto as follows:

''Further answering said counterclaim, plaintiffs herein state and

show to the court that if the defendant was injured or damaged, or if the defendant's wife was injured, that then defendant's injuries and damage, or the injuries to defendant's wife, were caused or directly contributed to by the defendant's own negligent and careless conduct, and the reckless and careless and negligent manner in which defendant drove his own automobile.

"That at the time and place of the collision in question herein, defendant was negligent in that he drove and operated his automobile at a high, excessive and dangerous rate of speed; that defendant negligently and carelessly drove said automobile at a high, excessive and dangerous rate of speed under the circumstances and conditions then existing, and without any proper care and with utter disregard for others and other vehicles upon and using said highway; that defendant negligently and carelessly failed and neglected to keep his automobile as close to the right hand side of said highway as practicable, when meeting and attempting to pass plaintiffs' automobile truck and trailer, and negligently and carelessly drove same across and upon defendant's left hand side of the highway, and upon that part of the highway reserved for traffic going in the direction in which the plaintiffs' truck was then proceeding. That the defendant negligently and carelessly caused his said automobile to turn and swerve from its right hand side of the highway to and across and upon the defendant's left hand side of the highway and into and against plaintiffs' truck; that the defendant negligently and carelessly failed and neglected to keep a proper or any lookout ahead for oncoming traffic on said highway, and that the defendant saw, or by the exercise of the highest degree of care upon his part could have seen, plaintiffs' truck approaching, in time thereafter for the defendant to have avoided said collision, by stopping, slowing down or turning to the side, and that this the defendant negligently failed to do, and that defendant negligently operated his automobile without keeping same under due and proper control.

"That defendant's own acts of negligence caused or directly contributed to cause and bring about said collision and such injuries or damage as the defendant or defendant's wife may have received; that by reason of the premises defendant is not entitled to recover on his counterclaim herein."

The plaintiffs in their instructions submitted to the jury the matters set out in the above quoted part of their answer to the counterclaim.

As we read the cases passing on such questions, we conclude that any error or omission from defendant's instruction No. 7 was cured by the instruction given by the plaintiffs.

We understand the rule to be that where the fact omitted from an instruction is a defensive feature and does not constitute an ele-

ment of the cause of action, the omission is cured by an instruction given for the other party submitting that feature.

As in this case, the defense pleaded to the counterclaim was contributory negligence, and failure to stop the Ford when the driver saw the truck and its driver in a place of peril. The last chance doctrine was a defensive feature, and since it was pleaded by plaintiffs, and covered by the plaintiffs' instruction, we think it cured any omission of that feature from the defendant's instruction. This was held in the early case of Heigold v. United Railways Co., 308 Mo. 142, 157, 271 S. W. 773. Many cases have so held since then. Among those so holding are, Mitchell v. Wabash Ry. Co., 69 S. W. (2d) 286, 290; Johnson v. Boaz-Kiel Const. Co., 22 S. W. (2d) 881, 883; Smith v. Cately Store Co., 24 S. W. (2d) 200, 202; Munden v. Kansas City, 38 S. W. (2d) 540, 543; Allison v. Dittbrenner, 50 S. W. (2d) 199, 202; Kaiser v. Jaccard, 52 S. W. (2d) 1. c. 20; Smith v. Ohio Millers, 49 S. W. (2d) 42, 46.

We think there was no error in giving instruction No. 8, above quoted. It covered the issues pleaded and upon which issues there was competent evidence.

It is our conclusion that the judgment should be affirmed. It is so ordered. *Allen, P. J.*, and *Bailey, J.*, concur.