**Agnes COMSTOCK, Plaintiff-Appellant,**

**v.**

**Hartford H. INGLES and Schatz Distributing Company, Inc., a Corporation, Defendants-Respondents.**

No. 45109.

Supreme Court of Missouri.

Division No. 1.

Dec. 10, 1956.

Clay C. Rogers, Robert L. Shirkey, Kansas City, for appellant, Rogers, Field, Gentry & Jackson, Kansas City, of counsel.

Paul C. Sprinkle, Sprinkle, Knowles & Carter, Kansas City, for respondents.

HOLMAN, Commissioner.

In this action plaintiff, Agnes Comstock, sought to recover the sum of $40,000 for personal injuries sustained when the automobile in which she was riding overturned. It was alleged that the casualty resulted from the negligent operation of a truck by the defendants. The jury returned a verdict for the defendants. After an unavailing motion for new trial plaintiff has appealed.

Plaintiff left Kansas City, Missouri, at about 10 p. m. on January 14, 1951, in an automobile being driven by Robert Benschoter. Their destination was LeMars, Iowa. They proceeded north on U. S. Highway 71 for about two hours and then stopped at Midway where they had coffee and sandwiches. Shortly after they resumed their journey they overtook the tractor-trailer truck of the corporate defendant being driven by its employee, defendant Hartford H. Ingles. They followed the truck for a quarter of a mile or more and then Benschoter signaled by blinking his lights that he desired to pass and the driver of the truck responded with a signal giving approval. It was while Benschoter was in the process of passing the truck that the instant accident occurred.

The casualty occurred about eleven miles south of Maryville, Missouri, on a level stretch of road at the bottom of two grades. The highway at that point was straight and paved portion thereof was either eighteen or twenty feet wide. There was a raised concrete "lip" about six inches wide on each side of the pavement. Openings, described as "spillways," were constructed at certain low points to permit water to drain from the highway. According to the testimony of plaintiff and Benschoter, when they were about "half way past" the trailer it suddenly swerved to the left across the center line and thus crowded their car onto the shoulder where it struck a spillway causing Benschoter to lose control of the car and it overturned. Plaintiff stated that after hitting the spillway the car angled back to the right and struck the trailer before it overturned, but Benschoter did not remember what occurred immediately after he struck the spillway. Plaintiff was thrown from the car before it came to rest and sustained severe injuries, the extent of which are not in issue here.

Ingles, the driver of the truck, testified that his outfit was about eight feet wide and forty-five feet long; that on the night in question the road was wet and slick and, at the point where the accident occurred, was covered with a thin "skim" of ice; that the shoulder was wet and muddy; that he was operating his truck on the right-hand side of the highway and that no part of his outfit was to the left of the center thereof; that there was no other nearby traffic; that he watched the Benschoter car through his rear vision mirrors and, soon after it started to pass, saw that it was skidding and that the driver couldn't control it. He stated that he knew something was going to happen so he pulled his truck over to the right as far as possible and stopped it; that when the car struck the spillway it nosed over to the right and struck the front part of the trailer; that the rear of the car then went up in the air and the car turned over and came to rest across the west half of the highway. He testified that at the time the car struck his trailer he had come to a stop and that his right dual wheels were on top of the "lip."

A highway patrolman investigated the accident and testified at the trial. He stated that he found skid marks that started on the shoulder and continued north for a distance of about 145 feet to the point where he found the Benschoter car. In the east lane of the highway he found dual-wheel truck skid marks for a distance of thirty feet.

The first contention of plaintiff is that the court erred in giving Instruction No. 8 at the request of defendants. This instruction required the jury to find that "said truck was traveling north upon the east half of the highway" and "that there was a spot of ice where the accident occurred" and "that the car in which the plaintiff was riding, in passing the truck, ran into a spillway or obstruction upon the west edge of the pavement, if you so find and by reason thereof, said automobile was deflected into or against the truck, if you so find, and that thereafter the driver of the automobile lost control and the automobile traveled off onto the west shoulder

of the road and then turned over, if you so find, and if you further find and believe from the evidence that at all times mentioned herein, the truck was upon the east half of the highway, if you so find, then you are instructed that the plaintiff cannot recover and your verdict shall be for the defendants." Plaintiff says that the portion of the submission which directed a verdict for defendants upon a finding that "the truck was upon the east half of the highway" was a positive misdirection as to the law and conflicted with plaintiff's Instruction No. 1 which predicated defendants' negligence upon a finding that defendant Ingles failed to drive and keep said truck as close to the right-hand side of the road as practicable.

The statute in effect at the time of this occurrence contained a provision that "all vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable." Section 304.020(2) RSMo 1949, V.A.M.S. It is true that the phrase, "upon the east (right) half of the highway," is not exactly synonymous with the phrase, "as close to the right-hand side of the highway as practicable." This for the reason that it is possible for a vehicle to be on the right half of the highway without being as close to the right-hand side thereof as practicable. However, we have concluded that this technical discrepancy was not prejudicial under the instant facts and submission and that there was no conflict in the basic submission when the instructions are considered in their entirety.

It was plaintiff's theory that the accident occurred when the truck was suddenly pulled over onto the left-hand side of the road, thus causing Benschoter to "take to the shoulder" where his car struck a spillway causing it to be deflected back to the right where it struck the truck and then overturned. That was substantially the testimony of both plaintiff and Benschoter. Plaintiff's Instruction No. 1 required a finding that while Benschoter was driving his car alongside the truck, while attempting to pass the same, the defendant Ingles,

in driving said truck, "failed to keep and drive said tractor-trailer truck as close to the right-hand side of the highway as practicable, and if you find and believe from the evidence that as a direct result of such failure, if any, to keep said tractor-trailer truck as close to the right-hand side of the highway as practicable, the automobile in which plaintiff was riding was thereby directly, if so, caused to be crowded off of the paved portion of said highway and to upset * * *."

It is elementary in a case of this kind that there can be no recovery unless the jury finds that the defendants were negligent, and further finds that such negligence was the proximate cause of the accident and resulting injury. In the instant case plaintiff chose to submit the element of negligence substantially in the words of the statute, i.e., "failed to keep and drive said tractor-trailer truck as close to the right-hand side of the highway as practicable." However, in submitting proximate cause, it will be noted that a finding was required that as a result of such failure "the automobile in which plaintiff was riding was thereby directly, if so, caused to be crowded off of the paved portion of said highway and to upset."

The west half of the highway was nine feet wide, according to plaintiff, and ten feet wide, according to the patrolman. It should not be assumed that the Benschoter 1940 Buick was wider than the maximum legal limit of eight feet. Section 304.170 (1) RSMo 1949, V.A.M.S. Peterson v. Tiona, Mo.Sup., 292 S.W.2d 581. It therefore necessarily follows that the jury could not have found that the truck crowded the passenger car "off of the paved portion of said highway" without finding that the truck was driven onto the left or west half of the highway. From what we have said it will appear that the basic disputed fact issue in this case was whether the truck was driven far enough to the left of the center of the highway to cause Benschoter to drive his car onto the shoulder and thus

strike the spillway. As we have indicated, a finding that the truck was driven on the west or left half of the highway was necessarily implied in the submission of proximate cause in plaintiff's Instruction No. 1. Defendants' Instruction No. 8 submitted, in effect, the converse of this issue when it authorized a verdict for defendants upon a finding that the truck was, at all times mentioned, upon the east half of the highway. As indicated, if the truck was on the east half of the highway (there being no obstruction or other traffic) it could not have crowded the passenger car off of the paved portion of the highway. Therefore, since defendants' Instruction No. 8 hypothesized facts which, if true, destroyed plaintiff's case on the factual theory which her evidence tended to prove and which was submitted in plaintiff's Instruction No. 1, the technical misdirection in Instruction No. 8 was not prejudicial to plaintiff and would not constitute reversible error. Silver v. Westlake, Mo.Sup., 248 S.W.2d 628.

■ The remaining point briefed by plaintiff relates to the alleged improper and prejudicial argument of defendants' counsel. A proper understanding of this contention requires that we state certain evidence relating to the personal life and moral conduct of plaintiff. It appears from plaintiff's testimony (elicited mainly on direct examination) that at the age of 20 she married Harvey Schuermann and lived with him in Oklahoma for 18 years. They had three children. In September 1949 she left her husband and children and went to Minnesota where she lived with Robert Benschoter in that state and at LeMars, Iowa, until November 1950. On April 5, 1950, plaintiff's husband obtained a divorce and was granted the custody of the three children. In November 1950 plaintiff went to Kansas City, Missouri, and shortly thereafter married a Mr. Comstock whom she had met when he worked for Benschoter in Iowa. On January 14, 1951, Benschoter came to see plaintiff in Kansas City and she decided to leave Comstock and go back to Iowa and live with Benschoter. They left that evening and a few hours later the accident in question occurred.

The statement complained of was made almost at the beginning of defendants' argument and was as follows: "This tragedy would never have happened if this plaintiff had not been in the act of committing a crime or violating the law at the time this happened. Mr. Shirkey: That is highly improper and I ask that Your Honor instruct the jury to disregard it and I ask Your Honor to admonish counsel not to repeat it. The Court: Disregard the statement about committing a crime. Mr. Shirkey: I ask Your Honor to admonish counsel for such a statement to the jury here. Mr. Sprinkle: We are talking about violating the law. The Court: I told the jury to disregard the statement about committing a crime."

It would appear that the foregoing statement was a reference to the fact that plaintiff admittedly was on her way to Iowa where she intended to live with Benschoter under circumstances that would ordinarily be regarded as adultery. Apparently she had not committed any crime at the time of the accident, although we deem it unnecessary to decide that question. The court at the request of plaintiff's counsel instructed the jury to disregard the statement about "committing a crime" but did not admonish counsel as requested. At this point it should perhaps be stated that, in the sense used in this argument, we regard the phrases, "committing a crime," and "violating the law," to be substantially synonymous.

In considering the possible prejudicial effect of the foregoing statement, we think it should be noted that counsel for each side appeared to have covered the matter of plaintiff's marital and moral life in the opening statements and that plaintiff testified in detail about these matters. While such may not have been relevant, plaintiff's counsel evidently considered it to be wise trial strategy to voluntarily disclose many

of these matters. We observe further that after the statement and ruling in question, defendants' counsel, in the remainder of his argument, repeatedly referred to plaintiff's conduct in the respects under consideration in arguing the question of her credibility, without any objection being interposed. We mention the foregoing in order to demonstrate that the jury was freely and fully advised as to the moral background of plaintiff and hence it would appear less likely that prejudice would result from the one isolated incident in the argument of which plaintiff now complains.

 "The trial judge hears the testimony and the arguments, and in view of his opportunity to weigh and determine the likely or possible effect of the alleged prejudicial argument, we are inclined to defer to his rulings unless it appears that the protested arguments so patently pass legitimate bounds as to be manifestly prejudicial and the ruling of the trial court thereon a clear abuse of discretion." Cordray v. City of Brookfield, Mo.Sup., 88 S.W.2d 161, 165. We have concluded that the instant argument was not manifestly prejudicial and that the trial court did not abuse its discretion in its rulings in response to plaintiff's objections. It will be noted that the jury was instructed to disregard the statement complained of. We think that ruling sufficient, under the circumstances of this case, without a specific admonition to defendants' counsel. Kelley v. Illinois Central R. Co., 352 Mo. 301, 177 S.W.2d 435; Sollenberger v. Kansas City Public Service Co., 356 Mo. 454, 202 S.W.2d 25. Moreover, since this matter was specifically set out in the motion for new trial, the action of the trial court in overruling the same indicates a determination by that court that the argument was not prejudicial. Under the instant circumstances we cannot say that such ruling was an abuse of discretion.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.