Maggie E. HANSON, Plaintiff, Respondent,

v.

Richard Arlen TUCKER, Defendant, Appellant.

No. 45852.

Supreme Court of Missouri, Division No. 1.

June 10, 1957.

Robert L. Spurrier, Butler, for appellant.

Edward J. Murphy, Butler, for respondent.

HYDE, Justice.

Action for damages for personal injuries sustained in a collision of automobiles. Plaintiff had verdict and judgment for $15,000 and defendant has appealed.

Defendant claims error in giving Instruction No. 1, admitting testimony of plaintiff claimed to be mere conclusions, and excessive verdict. The collision occurred on Highway 71 about 10:00 P.M. on July 1, 1955, about four miles south of Butler. The highway had a two lane concrete pavement, 18 feet wide, with gravel shoulders at least six feet wide. Plaintiff said she was driving north at about 35 miles per hour about two feet east of the center line of the pavement, and had just crossed the Possum Creek bridge when she saw several cars come around a curve about a quarter of a mile north of the bridge. One car kept coming towards her and she began to ease over to the east to try to get off on the gravel but couldn't, so she put her brakes on and got her car almost stopped before defendant's car struck it. She did not know how far defendant's car was from her when it came over the center line. Plaintiff's account was corroborated by a truck driver who was driving behind her at the time and had to slow down. (He said he was going 45 miles per hour and plaintiff about 30.) He saw defendant's car gradually bearing to the left, 400 to 500 feet away, then cross the center line and strike plaintiff's car a glancing blow. (He said plaintiff's car was about in the middle of her half of the pavement.) Also a State Highway Patrolman, who came at 10:30 P.M. to investigate the collision, found an area of debris (water and dirt) "in the approximate center of the northbound lane" and "a trail of liquid, greenish color", leading from that point to defendant's car in the ditch on the west side of the highway. Both plaintiff and the patrolman observed indications that defendant had been drinking intoxicating liquor and defendant stated to the patrolman that he had been drinking. (Defendant testified he had been drinking beer only.) The patrolman said the collision was about one-tenth of a mile north of the bridge and that the curve was approximately two-tenths of a mile north of the bridge. Because of the above allegations of error, it is unnecessary to state defendant's evidence, except to note that his speed was estimated by him at 45 to 55 miles per hour.

Instruction No. 1 was as follows: "The court instructs the jury that if you find and believe from the evidence that on the 1st day of July 1955, about the hour of 10 P.M. of said day, plaintiff was operating her husband's automobile in a northerly direction on U S No. 71 Highway in Bates County, Missouri, between Rich Hill and Butler, Missouri, if so, and that while so operating, as aforesaid, Defendant was driving his automobile in a southerly direction at the aforementioned time and place, if so, and that said automobiles then came into violent collision, and if you further find and believe from the evidence that as Defendant's automobile approached the automobile Plaintiff was driving, coming from the opposite direction, that the Defendant's automobile was travelling on the East or Left Hand side of the highway and

toward the automobile Plaintiff was driving, if so, and if you further find that said Defendant then and there failed and omitted to turn his said automobile to the right of the center of said highway so as to pass the said automobile which Plaintiff was operating without interference after Defendant saw, or by the exercise of due care could have seen said automobile which Plaintiff was operating approaching on said highway, if so, in time for Defendant to have so turned, and passed Plaintiff without interference, if you find he could have done so, then if you so find the facts to be, and if you find that the defendant was thereby negligent, if so, and that such negligence, if any, of Defendant, directly caused the said collision, if so, and that Plaintiff was at all times in the exercise of the highest degree of care for her own safety and was not negligent, then your verdict will be in favor of the Plaintiff and against Defendant."

■ Defendant contends this instruction submitted negligence not alleged in the petition, submitted statutory negligence under Section 304.020(3) RSMo 1949, V.A.M.S., which had been repealed in 1953 (Laws 1953, p. 587), and was not supported by the evidence. Plaintiff's petition contained the following allegations of negligence, upon which plaintiff says this instruction was based. "(c) Defendant did carelessly and negligently failed to drive his automobile as close as possible to the right side of said highway. (d) Defendant did carelessly and negligently cause, permit or allow his automobile to cross the center of said highway, in violation of the law, onto the left side of said highway and into the northbound or eastern lane of traffic, to-wit: directly into plaintiff's path of travel." Defendant says the instruction submits violation of 304.020(3) while paragraph (c) of the petition charges violation of 304.020(2) and paragraph (d) is based on "a sudden swerve by defendant to his left directly into plaintiff's path of travel as distinguished from the submission in the instruction of the defendant driving on the left side of the road and thereafter failing to turn to his right." However, paragraph (d) of the petition says nothing about a sudden swerve and we construe the allegations of the petition and the hypothesis of the instruction as charging and submitting driving on the wrong side of the road as the essential negligence relied on, which would be common law negligence as well as negligence under Sec. 304.015 enacted in 1953. Laws 1953, p. 587. The fact that the instruction also required a finding that defendant failed to turn to the right of the center of the highway only meant that the jury must find that he continued to drive on the wrong side until the collision occurred. For a somewhat similar contention about an instruction see discussion in Comstock v. Ingles, Mo.Sup., 296 S.W.2d 68, 70. It is obvious that plaintiff's evidence hereinabove summarized, supported the findings required by this instruction. We hold this instruction was not prejudicially erroneous.

■■ Defendant's claim of error in admission of evidence is based on the following questions, answers and rulings. On direct examination of plaintiff: "Q. (By Mr. Murphy) Now, when you saw this car coming toward you, Mrs. Hanson, and you said he was coming over on your side of the road, do you have any idea how far the car was away from you at the time it started coming towards you? A. I do not. There were so many lights, you know; I just saw that one, those two lights coming at me, and I thought oh, dear, I don't know what else to do, I didn't have time to do anything else, only ease over.

"Mr. Spurrier: If the Court please, I object to the statement 'I didn't have time to do anything else' as a conclusion of the witness.

"The Court: Overruled." On redirect examination of plaintiff: "Q. Did you have time to avoid the Tucker automobile?

"Mr. Spurrier: Now just a moment. If Your Honor please, I object to that as call-

ing for a conclusion of the witness, invading the province of the jury.

"The Court: Overruled.

"Q. (By Mr. Murphy) Did you have time, Mrs. Hanson, to evade this car? A. If I would I would have; if I could have I sure would have, but I didn't have time.

"Mr. Spurrier: Now, if the Court please, I move to strike that answer for the reason that it's a self-serving declaration, in addition to the reasons given in the objection to the question.

"The Court: Overruled."

The answer on direct examination of plaintiff was given before there was any objection and there was no motion to strike so there was nothing actually before the court for ruling. Furthermore, plaintiff had previously testified that, after seeing defendant's car coming towards her, "I began to ease over to the east to try to get off on the gravel as quick as I could, but, my, he was coming so fast that I couldn't, so I just put my brakes on." Objection was made and sustained to the part "my, he was coming so fast" but the statement that plaintiff couldn't get off on the gravel thus remained in evidence without objection. The question and answer on redirect examination was after plaintiff had been cross-examined thoroughly concerning the approach of defendant's car, during which, when asked where defendant's car was with respect to the center line when she thought defendant would get over on his side, she said: "All happened so fast I couldn't tell you." Plaintiff was also asked how far she pulled her car to the right and said: "I don't know, I couldn't tell you how far. I began to pull over as quick as I could as fast as I could." No motion was made to strike either of these answers as conclusions. Thus the second statement made on redirect examination, was merely repetition of matter already in evidence. Under these circumstances, we cannot hold there was any prejudicial error in the court's final ruling. Moreover, a substantially

similar question and answer was held not to be ground for reversal in Grisham v. Freewald, 230 Mo.App. 1203, 95 S.W.2d 349, 353; see also Scanlon v. Kansas City, 325 Mo. 125, 28 S.W.2d 84; Sullivan v. Union Electric Light & Power Co., 331 Mo. 1065, 56 S.W.2d 97; Kennedy v. Union Electric Co., 358 Mo. 504, 216 S.W.2d 756, 761. It appears unlikely that plaintiff surprised by defendant's car coming towards her so unexpectedly, could judge time, speeds and distances at night under the circumstances shown and these authorities indicate that some inferences are permissible in testimony concerning such a situation.

 On the question of excessive verdict, defendant cites Harrison v. St. Louis Public Service Co., Mo.App., 251 S. W.2d 348, 354, in which the court held the verdict of $5,450 "approaches the maximum allowable for the injuries sustained" in that case; and Burr v. Kansas City Public Service Co., Mo.Sup., 276 S.W. 2d 120, 125, in which a verdict for $15,000 was held excessive by $6,000. The plaintiff in the Harrison case, 72 years old when injured, had no broken bones except the tenth rib and her principal complaints were bursitis and arthritis in her right shoulder and aggravation of a preexisting arthritic condition of the lumbar region of the spine. The plaintiff in the Burr case, 59 years old when injured, was thrown forward so that her left shoulder struck a bar on the end of the seat. A definite fracture of the clavicle was not shown but she sustained an injury to the sternal clavicular joint, which had a similar effect to that of plaintiff because it permanently limited its motion and impaired the use of her left arm. She also wrenched her neck causing soreness there and on her left side. However, there were no special damages shown such as hospitalization, medical expenses or loss of wages. Plaintiff, herein, was 62 when injured and had fractures of the left clavicle (collar bone) and two ribs. She was in the hospital 20 days, wore a figure 8 plaster cast for 6 weeks which covered her from neck to waist; her left

arm was then placed in a sling for 4 weeks, her right ankle was swollen for three months and would give way under her; there was an unsatisfactory union of the collar bone after 6 weeks and the pain shifted from the broken bone in the clavicle region to the outer portion of the shoulder, but union was afterwards obtained; there was atrophy in her shoulder and arm, with bursitis and myositis of the shoulder and arm for which she received X-Ray therapy; the doctor in Butler had seen her 28 times since she left the hospital; she had a permanent limitation of motion in the arm and shoulder so that she cannot pin her hair up or button her blouse and cannot lift her left arm above her shoulder or put it behind her back; and she still experiences pain in her back.

Plaintiff said she had never been sick any. She had low blood pressure from the shock of the accident and lost 20 pounds. She had always worked at altering men and women's clothes but could not go back to sewing. She had also rented four rooms in her home which she discontinued because of inability to look after them. Plaintiff's condition was improving and she was able to do the cooking and washing dishes at the time of the trial but her back still hurt all of the time. She was treated by a doctor in Butler and two doctors in Kansas City and was still going to the doctor in Butler at the time of the trial for her back condition, which he diagnosed as myositis, an infection of the muscles of the area, and which he thought would eventually clear up. Although plaintiff's evidence failed to show the amount of loss of earnings, the cost of medical treatment or hospitalization, nevertheless her special damages would appear to be substantial. We must consider plaintiff's evidence as true and give her the benefit of all reasonable inferences arising from it. Thus it seems plaintiff suffered greater injuries and damages than the plaintiff in the Burr case relied on by defendant. For other cases of somewhat similar disablement see Lonnecker v. Borris, Mo.Sup., 245 S.W.2d

53; Brandt v. Thompson, Mo.Sup., 252 S.W.2d 339; Harris v. St. Louis Public Service Co., Mo.Sup., 270 S.W.2d 850; Grimm v. Gargis, Mo., 303 S.W.2d 43. Because of the complications from plaintiff's fracture of the clavicle, her apparent special damages, the considerable permanent limitation of motion in her left arm and shoulder, we cannot hold the verdict excessive.

The judgment is affirmed.

All concur.